MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
JACQUELINE J. MCQUARRIE, Deputy City Attorney
California State Bar No. 267319
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Defendants
City of San Diego, Matthew Zajda

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ashley R. Vuz, <br><br>    Plaintiff, <br><br>v. <br><br>DCSS III, INC., a California corporation doing business as GOSSIP GRILL; DWAYNE WYNNE, an individual; MARIA MARTINEZ ROCHA, an individual formerly identified as Doe No. 1; ARNELL CASTEEL, an individual formerly identified as Doe No. 2; JERMAINE CASTANEDA, an individual formerly identified as Doe No. 3; COUNTY OF SAN DIEGO, a political subdivision of the State of California; EMILY CHOW, an individual; CITY OF SAN DIEGO, a municipal corporation; MATTHEW ZADJA, an individual; and DOE NOS. 4 THROUGH 45, individuals, <br><br>    Defendants. | Case No. 20cv0246 H (AGS) <br><br>**NOTICE OF LODGMENT IN SUPPORT OF DEFENDANTS CITY OF SAN DIEGO'S AND MATTHEW ZAJDA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br>Date: June 8, 2020 <br>Time: 10:30 a.m. <br>Judge: Hon. Marilyn L. Huff <br>Court Room: 15A <br>Trial: Not Set |

Defendants City of San Diego and Matthew Zajda lodge the following documents in support of their Motion to Dismiss Plaintiff's First Amended Complaint:

**Exhibit A:** San Diego Police Department Training Bulletin 14-05

///

///

**Exhibit B:** San Diego County Sheriff's Department Detention Services Bureau – Manual of Policies and Procedures No. R.

Dated: May 4, 2020          MARA W. ELLIOTT, City Attorney

By */s/ Jacqueline J. McQuarrie*
    Jacqueline J. McQuarrie
    Deputy City Attorney

Attorneys for Defendants
City of San Diego, Matthew Zajda

# EXHIBIT A

**San Diego Police Department**

TRAINING BULLETIN

A PUBLICATION OF THE SAN DIEGO POLICE DEPARTMENT

SHELLEY ZIMMERMAN
CHIEF OF POLICE

TB 14-05                                                                                                        DATE: 10/28/2014

**TITLE**

**POLICE INTERACTION WITH TRANSGENDER INDIVIDUALS**

I.   **BACKGROUND**

The San Diego Police Department is committed to working with the diverse communities it serves. The Department has been working with stakeholders to establish procedures that create mutual understanding, prevent discrimination and conflict, and ensure the appropriate treatment of transgender individuals. In the absence of exigent circumstances, the guidelines below apply to all Department employees.

II.  **KEY TERMS**

*Transgender:* A term used to refer to a person who is born with the genetic traits and anatomy of one gender (i.e., male or female) but self-identifies as another gender (i.e., feminine or masculine). A transgender person can be pre-operative, post-operative, or non-operative.

*Gender identity:* A person's sense of being a man, a woman, or both, or neither

*Gender expression:* Quite apart from one's gender at birth as male or female, how a person represents or expresses one's gender identity to others; for example, external characteristics and behaviors that are socially defined as either masculine or feminine, such as dress, grooming, mannerisms, speech patterns and social interactions.  Social or cultural norms can vary widely and some characteristics that may be accepted as masculine, feminine, or neutral in one culture may not be assessed similarly in another.

*Biological Sex:* Refers to the objectively measureable organs, hormones and chromosomes of an individual.

*Sexual Orientation:* A term describing a person's physical and/or emotional attraction to members of the same sex and/or a different sex.

**III.     GENERAL GUIDELINES**

The following guidelines are established to ensure police contacts with transgender individuals are professional, respectful, and courteous:

- Do not use language that a reasonable person would consider demeaning to another person, in particular language that references a person's gender identity, gender expression, or sexual orientation;
- When referring to or talking about a transgender individual, the terms "Transvestite" and "Transsexual" are out-dated terms and should not be used. The correct term is transgender.
- Treat transgender persons in a manner that reveals respect for the individual's gender identity and gender expression, which includes addressing them by their preferred name and using gender pronouns appropriate to the individual's gender self-identity and expression.

**A.  Determining How to Address a Transgender Individual**

- When a person identifies himself/herself as transgender, respect the expressed gender and do not question it;
- If the individual does not self-identify as transgender, the following guidelines apply:

  1. When the intention of a person's gender presentation is clear to a reasonable person (based on attire and other cues), use this as a basis for gender determination.

  2. When a person's sex is unclear or the officer is not certain of the person's gender identity, it is appropriate to inquire how the individual wishes to be addressed (e.g., Sir, Ma'am) and the name by which the individual wishes to be addressed. This name shall be noted as an (AKA) if it differs from the individual's legal name.

  3. If a transgender person is unwilling to provide information that enables the officer(s) to know what name and/or gender is preferable, then the officer(s) should make a determination about the person's gender based on the person's gender expression (i.e., clothing, language demeanor, etc.) and any other evidence available to the officer(s). For example, if the person is clearly dressed like a woman and presenting as a woman, then the person should be recognized and addressed as a woman.

  4. A Department of Motor Vehicle Identification shall not be acceptable as an initial proof of gender identity as it can often reflect the gender the individual is transitioning from (as part of the transition process) and not the biological gender the individual possesses.

  5. Any other government-issued form of identification (such as a passport) shall only be acceptable as initial proof of gender identity in the absence of self-identification by the individual or some other obvious expression of gender identity.

- Any information obtained about an individual's transgender status (e.g., preferred name and pronoun) should be (when appropriate) documented and provided to relevant Department employees for the purpose of ensuring continuity of appropriate treatment (e.g., in the narrative of the report put a line that says, "It should be noted that Victim Smith is a transgender woman and will be referred as female throughout this report"); and,
- The mention of transgender status should be noted in the narrative of the report to avoid confusion if the individual's presentation may differ when appearing in court; and,
- Under no circumstances shall Department employees disclose to non-involved persons that an individual is transgender. As with other policies, a "need to know" basis should guide decisions about disclosure.

**B. During Field Searches Involving Transgender Individuals**

- A search or frisk shall not be performed for the sole purpose of determining an individual's anatomical gender;
- Transgender individuals shall not be subject to more invasive search or frisk procedures than non-transgender individuals;
- When an individual is identified as a transgender person, Department employees shall respect the gender identification expressed by the individual and shall not question this identity;
- Officers should not inquire about intimate details of an individual's anatomy or surgical status to determine an individual's gender because no proof of an individual's gender is required. This requirement can change for purposes of booking, as addressed in policies on booking;
- Requests to remove appearance-related items, such as prosthetics, clothing that conveys gender identity, wigs, and cosmetics, shall be consistent with requirements for the removal of similar items for non-transgender individuals;
- When an arresting officer has reason to believe that the arrestee is a transgender person, the officer shall specifically inform the arrestee that, as with any other arrestee, he/she must be searched. Ask the arrestee if there is a preference to be searched by a male or female officer. If the arrestee's gender request can be reasonably and expeditiously accommodated without risk to officer safety, the request should be granted;
- When an immediate cursory search for weapons is necessary for safety, it may be conducted in the field by an officer of either sex;
- When frisking or searching a transgender person the frisk/search will be conducted in a way that reflects their gender identity. For Example: Individuals who identify as female but are still biologically male should be frisked/searched as if the person was female, per existing Department procedures on searching persons;
- Recognize that non-traditional gender identities and gender expressions do not constitute reasonable suspicion or *prima facie* evidence that an individual is or has engaged in prostitution or any other crime.

C. **Arresting and booking procedures involving transgender individuals**

- An individual's lower anatomy or surgical status determines which jail facility the individual is booked into; no other changes or surgeries apply;
- For purposes of booking, it is necessary to inquire about details of an individual's anatomy or surgical status to determine the appropriate jail facility;
- Officers will accept a verbal a response as accurate when determining which facility to book the suspect into; if, during the booking process, deputies determine the information provided to the officer was not accurate, the officer will transport the individual to the appropriate facility;
- Once the individual is booked into the appropriate jail facility the officer **must** alert the intake deputy that the individual is transgender or transitioning. The officer shall then document in the report the name of the deputy that was alerted and that the advisement was given to deputies;
- Often transgender individuals are taking a number of medications as part of their transition. Missing dosage or coming off those medications can be life threatening to the individual;
- The officer must make every reasonable attempt to recover medications for the individual and take those medications to the jail facility with their personal property;
- In the case when the officer cannot retrieve medications a list of current medications should be gathered and given to the nurse at the jail facility.

# EXHIBIT B

**San Diego County Sheriff's Department Detention Services Bureau – Manual of Policies and Procedures**

| | |
|---|---|
| **DATE:** | NOVEMBER 13, 2018 |
| **NUMBER:** | R.13 |
| **SUBJECT:** | TRANSGENDER AND INTERSEX INMATES |
| **RELATED SECTIONS:** | R.1, R.3, R.11, I.47, I.52, L.1, L.11, J.3, and PREA |

PURPOSE

To ensure decisions regarding the searching, housing, programming, and in-custody services such as clothing, commissary, and toiletries are applied in a manner consistent with an inmate's declared gender identity.

POLICY

Staff shall treat all inmates with respect and maintain professional positive interactions and effective communication with inmates. Staff shall not use racial, ethnic, homophobic or other derogatory language towards any individual.

It is the policy of the San Diego County Sheriff's Department to receive, evaluate, house, and provide secure, safe and humane custody of all persons, including transgender and intersex, which are lawfully committed or held for confinement by the Sheriff until their lawful and appropriate release or transfer to another authority.

PROCEDURE

I. DEFINITIONS

**Transgender** – a person whose gender identity (internal sense of feeling male or female) differs from their sex at birth.

**Intersex** – a condition in which a person is born with external genitalia, internal reproductive organs, chromosome patterns, and/or an endocrine system that does not fit typical definitions of male or female.

**LGBTQ+** – acronym used to include all those who have diverse sexual orientations and/or gender identities. The acronym includes those who identify as lesbian, gay, bisexual, transgender, queer and/or questioning and the "+" includes all others within the spectrum.

**Gender identity** – distinct from sexual orientation and refers to a person's internal, deeply felt sense of being male, female, or non-binary.

II. IDENTIFICATION OF TRANSGENDER AND INTERSEX INMATES

    A. Upon identifying an individual as transgender or intersex, based on the inmate's response to the gender identity intake screening question, medical staff will immediately notify the Jail Population Management Unit (JPMU).

R.13 CLASSIFICATION OF TRANSGENDER AND INTERSEX INMATES      Page 1 of 4
#18//15 NEW POLICY

EXHIBIT C

    B.    If at any time a staff member suspects an inmate may be transgender or intersex, they will notify JPMU for a resolution.

III.    SEARCHES OF TRANSGENDER AND INTERSEX INMATES

    A.    All searches of transgender and intersex inmates will be conducted by two staff members of the gender requested by the transgender inmate. Staff shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining genital status. If the inmate's genital status is unknown, it may be determined during conversations with the inmate, by reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner.

    B.    Inmates who identify as transgender or intersex shall not be subject to a strip search or body scan, prior to being interviewed by JPMU, unless exigent circumstances exist.

    C.    JPMU staff will conduct an interview with the inmate to determine the appropriate gender of the staff to conduct the search. During the interview, JPMU staff will provide the inmate with a Voluntary Gender Identity Statement of Preference Form (J-350) to document the inmate's gender identity, gender search, and housing preference.

    D.    The J-350 Form will be placed in the inmate's custody record and a Jail Information Management System (JIMS) housing modifier will be entered to identify the inmate's strip search preference.

        1.    If the inmate prefers male deputies to conduct the strip search, the code MSS will be utilized.

        2.    If the inmate prefers female deputies to conduct the strip search, the code FSS will be utilized.

        3.    Transgender or intersex inmates who do not specify a gender search preference on the J-350 form will be searched by staff that is of the same gender as the inmate's biological sex.

IV.    HOUSING AND PROGRAMMING ASSIGNMENTS

    A.    JPMU staff will be consulted to determine individualized housing assignments for all transgender and intersex inmates in custody. JPMU staff will use the information obtained from the J-350 form, along with other factors to include the inmate's safety, safety of other inmates, and staff to determine the most suitable housing assignment. A transgender or intersex inmate's own views, with respect to his or her own safety, shall be given serious consideration.

    B.    Transgender and intersex inmates that do not specify a housing preference on the J-350 form, will receive housing assignments consistent with their biological sex.

    C.    Inmates shall not be denied access to programs or services, that they would otherwise be eligible for, based on their sexual orientation and/or gender identity.

    D.    In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the department shall consider, on a case-by-case basis, whether the placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

    E.    Transgender and intersex inmates can be housed in dorm style or cell housing. The following options apply when assigning a transgender or intersex inmate to cell housing:

1. Single cell housing
   The JIMS Operation Status Board (Area Status) will be changed to "JPMU-JPMU Override Do Not Change" for additional beds in the cell. This will notify staff the bed(s) are out of service and require approval from JPMU.

2. Transgender or intersex cell mate(s).

3. Non transgender or intersex cell mate(s) will require that the approval from JPMU is documented in an Inmate Status Report (ISR).

    F.    Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers. If a facility cannot conduct such an assessment immediately, the facility may hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment. JPMU supervisors will be notified and provide direction in determining the most suitable housing option.

JPMU staff will be consulted if an involuntary segregated housing assignment is necessary. The JPMU deputy shall clearly document the basis for the concern for the inmate's safety and the reason why no alternative means of separation can be arranged. All inmates housed in Administrative Segregation will be subject to weekly reviews as described in J.3.

    G.    In conjunction with existing parameters, transgender and intersex inmate custody levels shall be reassessed, when necessary, due to a referral, request, incident of sexual abuse, or receipt of additional information that increases the inmate's risk of sexual victimization or abusiveness. Housing and programming assignments for each transgender or intersex inmate shall be reassessed at least twice each year to review any threats to safety experienced by the inmate.

V.    DOCUMENTATION

For each new arrest, all initial classification housing assignment decisions will be documented in an ISR, regardless of the housing decision (e.g. male or female facility, general population or protective custody). The ISR will detail the inmate's gender presentation, and their own views with respect to his or her own safety.

VI.    HYGIENE, COMMISSARY AND INMATE CLOTHING

    A.    Transgender and intersex inmates shall be given the opportunity to shower separately from other inmates.

R.13  CLASSIFICATION OF TRANSGENDER AND INTERSEX INMATES    Page 3 of 4
#18//15 NEW POLICY

EXHIBIT C

  B. Transgender and intersex inmates will be given jail issued clothing that matches with their gender identity (e.g. female undergarments for a transgender female inmate or male undergarments for a transgender male), upon request.

  C. Transgender and intersex inmates will be allowed to order available commissary items in accordance to their gender identity.

EXHIBIT C