1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY R. VUZ, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>DCSS III, INC., a California corporation dba GOSSIP GRILL; DWAYNE WYNEE, an individual; COUNTY OF SAN DIEGO, a political subdivision of the State of California; EMILY CHOW, an individual; CITY OF SAN DIEGO, a municipal corporation; MATTHEW ZAJDA, an individual; and DOE NOS. 1 through 45, individuals,<br><br>                              Defendants. | Case No.:  3:20-cv-00246-GPC-AGS<br><br>**ORDER:**<br><br>**GRANTING IN PART AND DENYING IN PART CITY DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 42]**<br><br>**GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 43].** |

1

1   Before the Court is Defendants City of San Diego and Matthew Zajda's[1]

2   (collectively, "City Defendants") Motion to Dismiss Plaintiff's First Amended

3   Complaint.  ECF No. 42.  The City Defendants' Motion has been fully briefed.  ECF

4   Nos. 44, 46.  Additionally, before the Court is the County of San Diego and Nurse Emily

5   Chow's (collectively, "County Defendants") Motion to Dismiss Plaintiff's First Amended

6   Complaint.  ECF No. 43.  The County Defendants' Motion has been fully briefed.  ECF

7   Nos. 47, 51.  For the following reasons, the Court **GRANTS** in part and **DENIES** in part

8   the City and County Defendants' motions to dismiss.

## PROCEDURAL BACKGROUND

10   On February 7, 2020, Plaintiff Ashley R. Vuz ("Plaintiff" or "Vuz"), filed a

11   complaint in this instant action.  ECF No. 1.  On April 17, 2020, Plaintiff filed a First

12   Amended Complaint.  ECF No. 33 ("FAC").  Plaintiff alleges violations of federal and

13   state civil rights laws, as well as counts for various common law causes of action.  *Id*.

14   Vuz names as Defendants DCCS III, Incorporated ("DCSS III, Inc."), dba Gossip Grill;

15   the City of San Diego; the County of San Diego; and several individuals.  Vuz

16   additionally names as Defendants the following Gossip Grill employees: Dwayne Wynne

17   ("Wynne"), Maria Martinez Rocha ("Rocha"), Anell Casteel ("Casteel"), and Jermaine

18   Castaneda ("Castaneda").

19   On May 4, 2020, the City Defendants filed a Motion to Dismiss Plaintiff's First

20   Amended Complaint.  ECF No. 42.  The City Defendants' Motion has been fully briefed.

---

[1] The caption lists the Defendant's surname as "Zadja," but the pleading papers refer to this Defendant's surname as "Zajda."

1   ECF Nos. 44, 46.  On May 15, 2020, the County Defendants filed a Motion to Dismiss

2   Plaintiff's First Amended Complaint.  ECF No. 43.  The County Defendants' Motion has

3   been fully briefed.  ECF Nos. 47, 51.  On June 9, 2020, this case was transferred from the

4   Honorable John A. Houston to the Honorable Gonzalo P. Curiel.

5   **FACTUAL BACKGROUND**

6         The following facts are taken from the allegations in Plaintiff's FAC.  Plaintiff is a

7   transgender woman.  FAC ¶ 3.[2]  She began her gender transition socially in 2015, coming

8   out as transgender to her parents and friends.  *Id.*  She adopted the use of female

9   pronouns and has taken hormones and undergone several surgeries to feminize her

10   appearance.  *Id.*  On October 11, 2016, Judge Mark A. Borenstein of the Los Angeles

11   County Superior Court signed a decree ordering that Plaintiff's gender be changed from

12   male to female and that her name be changed to "Ashley."  *Id.*  Plaintiff has since

13   changed her driver's license, passport, and social security card to identify herself as

14   female.  *Id.*  Plaintiff currently takes prescription medication as part of her gender

15   transition.  *Id.* ¶ 104.

16         On December 29, 2018, Ashley Vuz along with her mother and two other friends

17   visited Gossip Grill, a bar and restaurant in San Diego and paid $20 for the cover charge

18

19

20

21   [2] Plaintiff states that a person's "sex" is defined as "the classification as either male or female

22   customarily applied to newborns based on visual observations of primary sex characteristics (*i.e.*, genitalia)" and "gender identity" is a "person's inward sense of self as male, female, both, or neither."

23   *Id.* ¶¶ 25-26.  "A *cisgender* individual is a person whose sex and gender identity are congruent."  *Id.* ¶ 27. (emphasis in original).  "A *transgender* individual is a person whose sex and gender identity are not

24   congruent."  *Id.* (emphasis in original).  *See also* JUDITH BUTLER, UNDOING GENDER 6 (2004)

25   ("Transgender refers to those persons who cross-identify or who live as another gender, but who may or may not have undergone hormonal treatments or sex reassignment operations.").

26   3

27

28   3:20-cv-00246-GPC-AGS

to enter. *Id.* ¶ 58.  Shortly after entering Gossip Grill at approximately 11:30 p.m., Plaintiff used a gender-netural restroom. *Id*. ¶¶ 62-63.  Plaintiff alleges she was followed into the restroom by a Gossip Grill employee, Defendant Rocha ("Rocha"), who accused Plaintiff of vomiting and being drunk, grabbed her arm, and yelled at her to leave the restroom. *Id.* ¶¶ 65, 68.  Plaintiff denied Rocha's accusations and stated that she had a right to be in the gender-neutral restroom; Plaintiff maintains that while she was at Gossip Grill, she did not vomit, consume any alcohol, and did not appear intoxicated. *Id.* ¶¶ 66-67.  After leaving the restroom, Plaintiff was followed back to her table by Rocha, who continued to accuse Plaintiff of being intoxicated. *Id*. ¶ 72.  Plaintiff and her party left Gossip Grill at approximately midnight. *Id.* ¶ 74.

As she was leaving Gossip Grill, Plaintiff asked the hostess to refund her the $20 cover charge and the hostess agreed to do so. *Id.* ¶¶ 74, 76.  Subsequently, Defendants Rocha, Casteel, Castenada, Wynne and other Gossip Grill employees physically attacked Vuz, striking her several times and lacerating her arm. *Id*. ¶¶ 77-78.  Following this altercation outside of Gossip Grill, Plaintiff and her party fled to the corner of University Avenue and Vermont Street. *Id.* ¶ 82.  Defendant Rocha held Plaintiff in a headlock, and one of Plaintiff's friends removed Plaintiff from this headlock. *Id.* ¶¶ 78, 80.  Plaintiff alleges that Defendants Rocha, Casteel, and Castenada then pursued her and her party yelling obscenities and physically threatening them. *Id*. ¶¶ 84-88.

## I.    Arrest and Transport

Defendant San Diego Police Department ("SDPD") Officer Matthew Zajda subsequently arrested Plaintiff a block away from Gossip Grill. *Id*. ¶ 89.  Officer Zajda was responding to a call from a a Gossip Grill employee who reported that a robbery was in progress; this call was made while Plaintiff and her party were in Gossip Grill. *Id*. ¶

4

71.  Officer Zajda told Plaintiff that he was arresting her for felony robbery.  *Id*. ¶ 93.
Officer Zajda's investigation and subsequent arrest of Vuz were based on the allegations
of the Gossip Grill staff.  *Id*. ¶ ¶ 95-96.  Plaintiff alleges that Officer Zajda had no
warrant or probable cause for the arrest.  *Id*. ¶¶ 92, 94.

Officer Zajda learned that Vuz had not undergone gender reassignment surgery and
transported her to the San Diego County Jail (the "SDCJ") which is a male facility.[3]  *Id*. ¶
101.  Officer Zajda told Plaintiff that he was transporting her to a male facility "because
of her genitalia," as was required per the County's policy.  *Id*. ¶ 103.

## II.    Booking Process at SDCJ

On December 30, 2018, Vuz was booked into SDCJ for second degree felony
robbery.  *Id*. ¶ 105.  As part of the intake process, Officer Zajda completed the Form J-15,
and indicated on this form that Vuz's sex was "male."  *Id.* ¶ 107.  In the earlier arrest
report, Officer Zajda identified Vuz's sex as "female."  *Id*.

The SDPD policies are San Diego City policies, and the San Diego Police
Department Policy Manual ("SDPD Policy Manual") includes a section on "Police
Interaction with Transgender Individuals," Training Bulletin 14-05 ("TB 14-05").  *Id*. ¶¶
41, 42.  This section provides, *inter alia*, that "[a]n individual's lower anatomy or
surgical status determines which jail facility the individual is booked into; no other
changes or surgeries apply."  *Id*. ¶ 45.

Plaintiff alleges that this policy establishes a test for womanhood that the

---

[3] Las Colinas Detention and Reentry Facility ("LCDRF") is the central point of intake for female
arrestees.  FAC ¶ 34.

overwhelming majority of transgender women will fail.  *Id.* ¶ 46.  Plaintiff cites a 2015 survey by the National Center for Transgender Equality, which found that among individuals who were assigned a sex of male at birth, only 10 percent had undergone gender reassignment surgery—*i.e.*, a vaginoplasty and/or labiaplasty—whereas, 41 percent had undergone hair removal or electrolysis procedures, and 49 percent of respondents desired hormone therapy.  *Id.* ¶ 31.

The policies of the Sheriff's Department—*Policy and Procedure Manual* ("SDSD-MPP") and the Detention Services Bureau-Manual of Policies and Procedures (DSB-MPP)—are County policies.  *Id.* ¶¶ 47-49.  These policies govern the intake process for individuals who arrive at the County jail facility after being arrested.  *Id.* ¶ 51.  Section M.9 of the SDS-MPP provides that arrestees to be housed in a County detention facility must be medically screened by a registered nurse, who must conduct a "comprehensive assessment of the medical and psychiatric needs of the inmate and record the responses in JIMS."  *Id.* ¶ 53.  After this screening, arrestees are taken to a holding area to await the Jail Population Management Unit's ("JPMU") determination of appropriate housing assignments.  *Id.* ¶ 54.

During the booking process, Plaintiff underwent a medical screening by Defendant Emily Chow, a nurse at SDCJ.  In Nurse Chow's report, she documented that Ashley identifies as a male-to-female transgender individual, found her fit for jail at SDCJ, and noted "Sex: M" in the report.  *Id.* ¶ 112.  Plaintiff told Nurse Chow that she was required to take certain medications for maintaining her gender identity.  *Id.* ¶ 113.  Plaintiff never received this medication during the booking process.  *Id.*  Plaintiff additionally states that her shoes were confiscated and she was not provided with any footwear while detained. *Id.* ¶ 117.

1

**III.   Detention in Administrative Segregation**

2

Plaintiff was not housed with the general population at SDCJ and was instead

3

placed in administrative segregation ("ad-seg").  *Id.* ¶ 119.  In the first cell where she was

4

detained, Plaintiff was not provided access to a telephone, and she communicated her

5

desire to use a telephone to the SDCJ employees.  *Id.* ¶¶ 121, 125.  The SDCJ staff

6

transferred Plaintiff to a second cell.  *Id.* ¶ 125.

7

In this second cell, Plaintiff alleges that the walls were covered in feces, and she

8

restricted her movements inside the cell so as to avoid making contact with any of the

9

cell's feces-covered surfaces.  *Id.* ¶¶ 125, 129.  She further alleges that the toilet inside

10

this cell was covered in used toilet paper and that she was not provided with any clean

11

toilet paper, a bed, mattress, or sleeping bag throughout the duration of her detention in

12

the second cell.  *Id.* ¶¶ 125-126, 130. Plaintiff used the phone in the second cell to

13

arrange for her bail payment and was released on December 30, 2018.  *Id.* ¶¶ 133, 135.

14

Plaintiff alleges that she developed influenza due to her arrest and detention.  *Id.* ¶

15

144.  After she was released, Plaintiff sought out and received the Hepatitis A vaccine

16

due to her concern that she was potentially exposed to Hepatitis A while detained given

17

the outbreak in San Diego at that time.  *Id.* ¶ 144.  Plaintiff further alleges that as a result

18

of her arrest and detention, she has been diagnosed with Post Traumatic Stress Disorder

19

and has suffered a number of emotional injuries—including, anxiety, recurrent

20

nightmares, sadness, empathy, heightened gender dysmorphia, and increased fear of law

21

enforcement.  *Id.* ¶¶ 144-146.  Consequently, Plaintiff has avoided returning to San Diego

22

to visit her mother.  *Id.* ¶ 144.

23

Plaintiff now seeks damages against all Defendants.  Against the City Defendants,

24

Plaintiff alleges claims under the First Amendment and claims under 42 U.S.C. §§ 1983

25

26

27

28

and 1985.  Plaintiff alleges against County Defendants a First Amendment claim, claims under 42 U.S.C. § 1983, Cal. Gov. Code § 815.6, and the Bane Act (codified at Cal. Gov. Code § 52.1).  Defendants move to dismiss on all counts.  The Court addresses each argument in turn.

**LEGAL STANDARD**

Defendants move to dismiss Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Twombly").  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations

contradicting the exhibits attached to the complaint.  *Sprewell*, 266 F.3d at 988.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## DISCUSSION

Plaintiff brings several claims under alleging that City, County, and Individual Defendants violated her constitutional rights during the course of her arrest, her transportation to the SDCJ, and classification and conditions of confinement while at SDCJ.  Plaintiff brings numerous claims for violations of her constitution rights under Section 1983, which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

The Court first considers the defenses raised by Municipal and Individual Defendants against all claims made against them on the basis of liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and qualified immunity, respectively.  The Court will then turn to each of Plaintiff's claims regarding alleged violations of federal

3:20-cv-00246-GPC-AGS

1   and state law by Defendants.

2   **I.    Section 1983 Claims Against Municipal Defendants**

3   Municipalities may be liable under Section 1983 for constitutional injuries

4   pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train,

5   supervise, or discipline; or (4) a decision or act by a final policymaker.

6   *Monell*, 436 U.S. at 690-95.  "A municipality may not, however, be sued under

7   a *respondeat superior* theory."  *Id.* at 693–95.  A plaintiff must therefore show

8   "deliberate action attributable to the municipality [that] directly caused a deprivation of

9   federal rights."  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997).  "Where a

10  court fails to adhere to rigorous requirements of culpability and causation, municipal

11  liability collapses into respondeat superior liability."  *Horton by Horton v. City of Santa*

12  *Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

13  **a.  *Monell* Liability of City of San Diego**

14  Plaintiff brings five separate causes of action against Defendant City for violations

15  of her First and Fourteenth Amendment rights based on the City's adherence to TB 14-

16  05, which provides, *inter alia*, that the City police officers will transport an arrestee to the

17  appropriate jail facility based on the arrestee's genitalia.[4]  ECF No. 42-1 at 25.  Local

18  government entities are considered "persons" for purposes of § 1983 and can be sued

19  directly for monetary, declaratory, or injunctive relief where "the action that is alleged to

20

21  ──────────────

22

23

24  [4] TB 14-05 is incorporated by reference in the First Amended Complaint and can be considered by the
    Court at the motion to dismiss stage.  *See United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir.

25  2003).

26                                              10

27

28                                                                          3:20-cv-00246-GPC-AGS

be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (1978).

In order to hold the City liable under Section 1983, Plaintiff must show "(1) that [she] possessed a constitutional right of which [she] was deprived; (2) that the [City] had a policy; (3) that the policy 'amounts to deliberate indifference' to [Vuz's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)).  There also must be a "direct causal link" between the policy or custom and the injury, and Plaintiff must be able to demonstrate that the injury resulted from a "permanent and well settled practice." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (internal quotations omitted).

Defendants argue that the claims against the City should be dismissed because Plaintiff fails to identify a specific city policy or a causal link between any policy and the constitutional injuries she suffered.  ECF No. 42-1 at 18-19.  Defendants argue that TB 14-05 is not a City policy but an explanation of the booking procedures mandated by the County.  *Id*. at 25.  Plaintiff counters that TB 14-05 is a municipal policy that "SDPA members are required to observe."  ECF No. 44 at 9.  The Court agrees with Plaintiff.

TB 14-05 is part of the SDPD Policy Manual and details a set of procedures to be applied by "all Department employees" in their interactions with transgender individuals. ECF No. 42, Ex. A at 1.  Section C of TB 14-05 is titled "Arresting and Booking Procedures Involving Transgender Individuals."  *Id*.  The first bullet point in Section C states that "an individual's lower anatomy or surgical status determines which jail facility the individual is booked into."  *Id*.  A "decision to adopt [a] particular course of action . .

11

. by th[e] government's authorized decisionmakers . . . surely represents an act of official government 'policy.'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  In other words, a policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.* at 483–84.  TB 14-05 articulates a specific City policy of transporting transgender arrestees to facilities that correspond with their genitalia.

Defendant City also moves to dismiss Plaintiff's *Monell* claims by arguing that Plaintiff has failed to show that TB 14-05 was "closely related" to her ultimate injury. ECF No. 42-1 at 25.  Mirroring the arguments made above, the City argues that TB 14-05 merely "outlines the facility an arrestee should be taken to for the initial process into the County jail system, of which the City has no control."  ECF No. 42-1 at 26.  Plaintiff counters that Officer Zajda made a determination pursuant to TB 14-05 that led to Plaintiff's transportation to SDCJ.  ECF No. 44 at 11.

In a Section 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury.  *See, e.g., Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).  To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation.  *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996); *Arnold*, 637 F.2d at 1355.  Where the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law, resolving issues of fault and causation is "straightforward" because proof of such a violation "establishes that . . . the municipal action was the moving force behind the injury of which the plaintiff complains."  *Bd. of County Comm'rs*, 520 U.S. at 404–05.

Here, Plaintiff alleges that adherence to TB 14-05 resulted in her constitutional injury and so "the unconstitutional policy at issue and the particular injury alleged are not only "closely related," *City of Canton v. Harris,* 489 U.S. 378, 391 (1989), they are cause and effect.  In reviewing a Rule 12(b)(6) motion to dismiss, this Court must accept as true all facts alleged in the complaint and draws all reasonable inferences in favor of the claimant.  *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  Plaintiff has plausibly alleged that the City policy resulted in her injury.

### b. *Monell* Liability of County Defendants

The County Defendants similarly argue that all claims against the municipality must be dismissed since Plaintiff has failed to allege how County policies—namely, Sections Q, R, and M of the DSB-MPP—were the "moving force" behind the alleged constitutional violations, and that she has failed to allege a widespread pattern of constitutional violations.  ECF No. 43-1 at 14-15.  The aforementioned sections of the DSB-MPP mandate that officers follow certain procedures during the arresting process (Section Q), that the classification and assignment of transgender inmates to male or female jail facilities are based on certain guidelines (Section R), and that a registered nurse conduct a medical screening of the arrestee and declare the arrestee "fit for jail" (Section M).  ECF No. 43-2, Exs. A-E.  Section R.13 provides that its purpose is to ensure that "decisions regarding the searching, housing, programming, and in-custody services . . . are applied in a manner consistent with an inmate's declared gender identity."  ECF No. 43-2 at 8.  The section provides that the jail staff will determine "the most suitable housing assignment," and directs that the "transgender or intersex inmate's own views . . . shall be given serious consideration"; "[t]ransgender and intersex inmates

13

that do not specify a housing preference on the J-350 form, will receive housing assignments consistent with their biological sex"; and "[i]nmates shall not be denied access to programs or services . . . based on their . . . gender identity." *Id.* at 9.

Here, Plaintiff alleges that adherence to these policies resulted in her injuries—*i.e.*, detention in a male jail facility in a segregated cell—and so the alleged "unconstitutional policy at issue" was the cause of her injuries. *City of Canton,* 489 U.S. at 391 (1989). Accepting as true all facts alleged in the FAC and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that she has plausibly alleged that the County policy resulted in her injury.

In sum, the Court declines to dismiss Plaintiff's *Monell* claims against the City and County Defendants at this time.

## II.   Qualified Immunity for Individual Defendants

Individual Defendants Zajda and Chow argue that they are entitled to qualified immunity for every cause of action alleged against them.  ECF No. 42-1 at 19-22, ECF No. 43-1 at 23-25.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The point of qualified immunity is to allow officials to take action 'with independence and without fear of consequences.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000) (quoting *Harlow*, 457 U.S. at 819).

When a defendant asserts qualified immunity in a Rule 12(b)(6) motion to dismiss, "dismissal is not appropriate unless we can determine, based on the complaint itself, that

3:20-cv-00246-GPC-AGS

qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (internal quotation omitted).  This determination involves two inquires: "'(1) whether, taken in the light most favorable to the party asserting injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case.'"  *Krainski v. Nevada ex rel. Bd of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009)).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Hamby v. Hammond*, 821 F.3d 1085, 1090–91 (9th Cir. 2016).  Plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert these [Officers] in this case that their particular conduct was unlawful."  *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law, the unlawfulness must be apparent."  *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

### a.  Defendant Chow

County Defendants argue that Defendant Chow is entitled to qualified immunity since (1) Plaintiff cannot plausibly allege that the completion of a medical assessment violated her constitutional rights or was retaliatory for any gender expression, and (2) there is no clear authority that dictates that that it is a constitutional violation for a nurse to clear a transgender individual to be housed separately from other inmates.  ECF No. 43-1 at 24-25.  Plaintiffs counter that Defendant Chow's responsibilities—namely, to

conduct a medical and psychiatric assessment—establish that she is not entitled to qualified immunity.  ECF No. 47 at 20.  However, Plaintiffs have failed to point to case law that would establish that Defendant Chow would have been on notice that her conduct was unlawful.  *See Sharp*, 871 F.3d at 911.  On this basis, the Court **DISMISSES** the claims against Defendant Chow, with leave to amend.

### b. Defendant Zajda

As to Officer Zajda, Defendants argue that there is no clearly established right to be "transported to a preferred jail facility" or a right to "telephone access during a lawful detention and transport."  ECF No. 42-1 at 21-22.   Plaintiff counters that this construction is "unduly narrow" and that the Court should instead focus on the unlawful "classification based on transgender status and surgical status in violation of the First and Fourteenth Amendments."  ECF No. 44 at 27.

As to the policy on the classification and transportation of transgender arrestees, Plaintiff points to no authority that would have placed Officer Zajda on notice that his adherence to this policy was unlawful.  Since, as discussed further below, there is no clearly established right to be transported to the jail that corresponds with one's gender identity.  As a result, Officer Zajda is entitled to qualified immunity regarding Plaintiff's equal protection claim.

However, as to Plaintiff's claim for a violation of her substantive due process rights due to Officer Zajda's failure to provide access to a telephone under California Penal Code § 851.5, the Court finds that Officer Zajda is not entitled to qualified immunity.  The Ninth Circuit has explained that this right is one of "real substance" entitled to constitutional due process protections.  *See Carlo v. City of Chino*, 105 F.3d

493, 500 (9th Cir. 1997).[5]   The Court declines to find qualified immunity exists for this claim but notes that "[o]nce an evidentiary record has been developed through discovery, [Defendant] will [again] be free to move for summary judgment based on qualified immunity."  *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) (citation and internal quotation marks omitted); *see also Skoog v. Cty. of Clackamas,* 469 F.3d 1221, 1233 (9th Cir. 2006) (noting qualified immunity is "normally . . . resolved on summary judgment").

## III.   First Amendment

Having considered the blanket defenses raised by Defendants against all claims made against them, the Court now considers Plaintiff's claims regarding specific violations of her constitutional rights.

Plaintiff alleges that she has a First Amendment right to "express her gender in a manner that is traditionally female" and on this basis makes two claims: (1) the City Defendants' decision to transport her to SDCJ impermissibly burdened her First Amendment right to express her chosen gender, and (2) the booking and detention process comprised retaliation by the City and County Defendants against her gender expression.  FAC ¶¶ 151-167.  Plaintiff alleges that the County and City are liable due to their failure to provide sufficient guidance in their respective guidelines on detaining transgender individuals, codified in DSB-MPP and TB 14-05.  *Id.* ¶¶ 164, 165. Defendants argue that Plaintiff fails to establish that gender expression qualifies as protected "expressive conduct," and moreover, even if she could establish this, Defendants' actions do not meet the standard for retaliation.

---

[5] The Court discusses this further below.  *See* Section VI.

17

### a.  Unconstitutional Burden—Counts 1 and 2

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  While "[t]he First Amendment literally forbids the abridgment only of 'speech,'" the Supreme Court has "long recognized that its protection does not end at the spoken or written word."  *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  A message "delivered by conduct that is intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative," *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 294 (1984), is symbolic speech that falls "within the scope of the First and Fourteenth Amendments."  *Johnson*, 491 U.S. at 404; *see also Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999) ("Non-verbal conduct implicates the First Amendment when it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." (citing *Johnson*, 491 U.S. at 404)).  However, the Supreme Court has also explicitly rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."  *United States v. O'Brien*, 391 U.S. 367, 376 (1968).  "Because the Court has eschewed a rule that 'all conduct is presumptively expressive,' individuals claiming the protection of the First Amendment must carry the burden of demonstrating that their nonverbal conduct meets the applicable standard."  *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (citing *Clark*, 468 U.S. at 293 n.5).

As noted above, not all conduct is presumptively expressive.  Expressive conduct is characterized by two requirements: (1) "an intent to convey a particularized message" and (2) a "great" "likelihood . . . that the message would be understood by those who viewed it."  *Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 410–11); *see also*

3:20-cv-00246-GPC-AGS

*Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 579 (9th Cir. 2014).  Plaintiff is ultimately responsible for establishing that her conduct is expressive.  *Knox*, 907 F.3d at 1181.

City Defendants argue that Plaintiff has not shown how her conduct qualifies as "expressive" and even if she could prove as such, she has failed to sufficiently allege that Defendants undertook action to suppress that speech.  ECF No. 42-1 at 12.  Plaintiff counters that this argument is "too undeveloped to be capable of assessment" and therefore City Defendants have failed  to carry their burden to show why Plaintiff's free expression claim should be dismissed.  ECF No. 44 at 13.

However, as described by the above, Plaintiff is responsible for establishing that her conduct is expressive.  Plaintiff summarily contends that her expression of her gender is made "[t]hrough her conduct," but provides no further grounding for her argument. FAC ¶ 149.  Courts have considered various challenges brought by individuals claiming that their First Amendment rights were violated based on their expressions of their sexual orientation or gender identity; however, where litigants have raised successful challenges, they have done so on the basis that some "conduct"—beyond the mere act of existing with said gender identity or sexual orientation—was suppressed by an unconstitutional burden.  *See, e.g.*, *McMillen v. Itawamba Cty. Sch. Dist.*, 702 F. Supp. 2d 699 (N.D. Miss. 2010) (school violated lesbian student's First Amendment rights by forbidding her from bringing a female date to prom and by forbidding her from wearing a tuxedo); *One, Inc. v. Olesen*, 355 U.S. 371 (1958) (government censorship of published material targeted towards lesbian, gay, bisexual, transgender, and queer ("LGBTQ") audiences infringed on First Amendment right); *Manual Enterprises, Inc. v. Day*, 370 U.S. 478, 489-91 (1962) (same); *Gay Students Org. of Univ. of N.H. v. Bonner*, 509 F.2d 652, 662 (1st Cir. 1974) (recognizing that the freedom of association protects the right of LGBTQ

3:20-cv-00246-GPC-AGS

people to congregate for the purpose of expressing their opinions under the First Amendment); *Acanfora v. Bd. of Ed. of Montgomery Cty.*, 491 F.2d 498, 499-500 (4th Cir. 1974) (firing of employee for his public statements revealing his homosexual identity was a violation of his First Amendment).

Alternatively, other litigants have challenged laws that prohibit individuals from changing the gender marker on their government-issued identification cards on the basis that such laws infringe on an individual's right to informational privacy—"to keep intimate information about themselves and their bodies private"—and that these laws force people to "embrace a gender and an identity that do not reflect their reality." Scott Skinner-Thompson, *The First Queer Right*, 116 MICH. L. REV. 881, 901 (2018) (collecting cases).

Here, Plaintiff has failed to articulate how her conduct qualifies as protected expression. Neither party has presented—and the Court has not found—that the expression of gender identity through generic "conduct" is protected speech under the First Amendment. Where courts have been presented similar cursory arguments, they have summarily dismissed such claims. *See, e.g., Adkins v. City of New York*, 143 F. Supp. 3d 134, 138 (S.D.N.Y. 2015) (dismissing transgender plaintiff's First Amendment claim because they did not cite "authority for this kludging together of anti-discrimination and First Amendment law"). Ultimately, Plaintiff has failed to sufficiently allege that her conduct was expressive or intended to convey any particular message, such that her First Amendment right was infringed.

Finally, Plaintiff brings a retaliation claim against both City and County Defendants. In order to make out a claim for retaliation a plaintiff must demonstrate that "(1) [s]he engaged in constitutionally protected activity; (2) as a result, [s]he was

20

subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  Since Plaintiff has failed to establish that she was engaged in a constitutionally protected activity, her retaliation claim fails.

Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss as to Plaintiff's first and second causes of action—for unconstitutional burden on protected expression and retaliation for protected expression—with leave to amend.

### b.  Retaliation Against Zajda and Doe Defendants—Count 3

Plaintiff claims that Defendant Zajda and Doe Defendants violated her First Amendment rights by not allowing her to "make any telephone calls during the period in which" she was in custody.  ECF No. 33 ¶ 170.  Prisoners and pre-trial detainees have a First Amendment right to telephone access.  *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (citations omitted).  However, this right is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Id*.

Defendants argue that Plaintiff fails to allege any actions by "Zajda to establish a constitutional violation" and that Plaintiff failed to request to use the telephone while in Zajda's custody.  ECF No. 42-1 at 13.  Furthermore, Defendants argue that it was reasonable for Zajda to not allow Plaintiff to access a telephone while detained due to the fact that Zajda was either driving Plaintiff to the jail or investigating the alleged crime. *Id.*  Plaintiff counters that if investigation and transportation allow an officer to deny access to a telephone then the right to access is meaningless since these activities take up such a large percentage of the time arrestees are in custody.  ECF No. 44 at 16.  Plaintiff

21

also contends that Defendant Zajda had an affirmative duty to notify Plaintiff of her right to make a telephone call. *Id.*

The Ninth Circuit has repeatedly affirmed that pre-trial detainees and prisoners have a First Amendment right to access the telephone. *Gallagher v. City of Winlock*, 287 Fed. Appx. 568 (9th Cir. 2008) (unpublished), *as amended on denial of reh'g* (Aug. 18, 2008); *Strandberg*, 791 F.2d at 747. Plaintiff alleges that Officer Zajda did not allow her to use the telephone. In reviewing a Rule 12(b)(6) motion to dismiss, this Court must accept as true all facts alleged in the complaint and draws all reasonable inferences in favor of the claimant. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Defendants' arguments are better suited for a motion for summary judgment when the record is more fully developed. Accordingly, the Court **DENIES** Defendants' Motions to Dismiss as to Plaintiff's third cause of action.

## IV.   Fourth Amendment

Plaintiff alleges that Officer Zajda violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure by arresting her without probable cause. FAC ¶ 175. Defendants counter that Plaintiff's allegations are "conclusory" and should be dismissed. ECF No. 42-1 at 14-15.

A law enforcement officer must have probable cause to make a warrantless arrest. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "The test [under federal law] for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.'" *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (citing *United States v. Bernard*, 623 F.2d 551, 559 (9th

Cir.1980)).  In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses.  *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991) (declining to adopt the view that "citizen witnesses are presumptively reliable"); *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 924 (9th Cir. 2001) (reversing the dismissal of a Fourth Amendment false arrest claim against police officers based on citizen's arrest where the plaintiff raised an inference that the officers did not independently investigate asserted violation of law).

Here, Plaintiff has alleged that Officer Zajda failed to make any independent investigation aside from his questioning of the Gossip Grill staff.  ECF No. 33 ¶ 95. Officer Zajda interviewed Gossip Grill employees but did not interview Plaintiff, her mother, or her friends prior to arresting Plaintiff.  *Id.* ¶ 97.  At the motion to dismiss stage, these allegations are enough to support the inference that Officer Zajda may have lacked probable cause for arresting Plaintiff.  The law is clear that law enforcement cannot rely solely on the claims of citizen witnesses in establishing probable cause. *Arpin*, 261 F.3d at 924-25.  In reviewing a Rule 12(b)(6) motion to dismiss, this Court must accept as true all facts alleged in the complaint and draws all reasonable inferences in favor of the claimant.  *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  Defendants' arguments are better suited for a motion for summary judgment when the record is more fully developed.  Accordingly, the Court declines to dismiss Plaintiff's Fourth Amendment claim at this time.

## V.     Fourteenth Amendment—Equal Protection

Plaintiff alleges City and County Defendants violated her Fourteenth Amendment right since she treated her differently than other similarly-situated arrestees on the basis

3:20-cv-00246-GPC-AGS

of her transgender status.  FAC ¶¶ 193-195.

"The Equal Protection Clause requires the State to treat all similarly situated people equally."  *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted). The Ninth Circuit has recognized that discrimination against an individual based on his or her transgender status is actionable under the Equal Protection Clause under an intermediate scrutiny standard.  *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

### a.  City Defendants

Plaintiff claims that City Defendants violated her Fourteenth Amendment rights by treating her differently from cisgender women and transgender women who have undergone gender reassignment surgery.  FAC ¶ 205.  Plaintiff alleges that this disparate treatment is mandated by City policy, TB-05, which mandates that arrestees are transported to facilities based on their biological sex, and that such classification of individuals on the basis of genitalia is not substantially related to any important government interest.  *Id*. ¶ 199.  City Defendants counter that Plaintiff has failed to show that the booking was done for the purpose of discriminating against her, and that Plaintiff has also failed to show how she was treated differently than any other arrestee.  ECF No. 42-1 at 16.  Defendants further maintain that the City's policy regarding transgender arrestees furthers an important governmental interest by allowing the government to quickly process arrestees into the penal system.  *Id*.

In reviewing a Rule 12(b)(6) motion to dismiss, this Court must accept as true all

1   facts alleged in the complaint and draws all reasonable inferences in favor of the

2   claimant.  *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768

3   F.3d 938, 945 (9th Cir. 2014).  Since the Ninth Circuit has recognized that discrimination

4   against an individual based on his or her transgender status is actionable under the Equal

5   Protection Clause under an intermediate scrutiny standard, *Karnoski*, 926 F.3d at 1201,

6   the Court applies the following test: (1) the government's stated objective must be

7   significant, substantial, or important; and (2) there must be a reasonable fit between the

8   challenged regulation and the asserted objective.  *United States v. Chovan*, 735 F.3d

9   1127, 1139 (9th Cir. 2013).  Here, Plaintiff claims she suffered disparate treatment in two

10  forms as a result of the City's policies and Defendant Zajda's decision to transport her to

11  a male facility: (1) transgender women are required to reveal the nature of their genitalia,

12  per TB-05, whereas cisgender women are not subject to such treatment; (2) City

13  Defendants apply disparate treatment to transgender individuals on the basis of whether

14  or not they have undergone gender reassignment surgery, permitting those who have

15  received surgery to be transported to detention facilities that are consistent with their

16  gender identity.  Defendants argue that the "straight-forward policy saves the officer

17  time" and "protects the safety of all who are involved."  ECF No. 42-1 at 16-17.  The

18  Court finds that viewing the allegations in the light most favorable to the Plaintiff, she

19  has made a plausible claim and moreover, that Defendants' arguments are best suited for

20  a motion for summary judgment when the record is more fully developed.  Consequently,

21  the Court declines to dismiss Plaintiff's Equal Protection claim against the City

22  Defendants.

23  / / /

24  / / /

25

26                                                 25

27

28

### b. County Defendants

Plaintiff claims that Nurse Chow and the County Defendants violated her Fourteenth Amendment rights through the intake and housing process by treating her differently than other cisgender female arrestees and other transgender arrestees who have undergone gender reassignment surgery. Plaintiff alleges that the County deprived Ashley of her rights by taking her to a holding area, placing her in a cell without a working phone, re-locating her to a cell covered in feces, prolonging her detention, and failing to provide her with the J-350 Form. FAC ¶ 226. As for Nurse Chow, Plaintiff alleges that Nurse Chow treated Defendant differently than other cisgender female arrestees and other transgender female arrestees who have undergone gender reassignment surgery, since individuals from both of these groups would not have been found medically fit for detention at a male jail facility. FAC ¶ 220. County Defendants argue that Plaintiff's claims must be dismissed since the applicable policies "significantly further[]" important governmental interests and Plaintiff has failed to show that Nurse Chow intentionally discriminated against Plaintiff on the basis of her transgender status. ECF No. 43-1 at 17-19.

As above, Plaintiff again alleges disparate treatment on the basis of both her transgender and surgical status. Defendants argue that prison officials can treat transgender individuals differently to protect them from potential violent acts of other prisoners, citing *Tates v. Blanas*, No. S-00-2539 OMP P, 2003 WL 23864868, at *4 (E.D. Cal. Mar. 11, 2003). ECF No. 43-1 at 17. In *Tates*, the court found that the jail facilities had erred in adopting policies—including, the classification of all biologically male inmates as "total separation" inmates—that ultimately had the effect of discriminating against transgender inmates, resulting in harsher shackling methods and detention in cells

26

that were cleaned less often and therefore in less hygienic states. *See id.* at *2-7. The Court found that the jail had failed to establish any legitimate reason for such policies. *See id.*

Here, the County Policies mandate that officers follow certain procedures during the arresting process (Section Q), that the classification and assignment of transgender inmates to male or female jail facilities are based on certain guidelines (Section R), and that a registered nurse conduct a medical screening of the arrestee and declare the arrestee "fit for jail" (Section M).  ECF No. 43-2, Exs. A-E.  Section R.13 provides that its purpose is to ensure that "decisions regarding the searching, housing, programming, and in-custody services . . . are applied in a manner consistent with an inmate's declared gender identity."  ECF No. 43-2 at 8.  The section provides that the jail staff will determine "the most suitable housing assignment"; the "transgender or intersex inmate's own views . . . shall be given serious consideration"; requires that "[t]ransgender and intersex inmates that do not specify a housing preference on the J-350 form will receive housing assignments consistent with their biological sex"; and further mandates that "[i]nmates shall not be denied access to programs or services . . . based on their . . . gender identity."  *Id.* at 9.  Plaintiff alleges that the County violated her rights under the Equal Protection Clause by taking her to a holding area, placing her in a cell without a working phone, re-locating her to a cell covered in feces, prolonging her detention, and failing to provide her with the J-350 Form.  FAC ¶ 226.  Defendants counter that the jail policies do not mandate that all transgender inmates be placed in administrative segregation, but instead dictate that inmates may be segregated on case-by-case bases for safety purposes.  ECF No. 43-1 at 17.  The Court agrees and finds that Plaintiff's aforementioned allegations are insufficient to make a finding that the County

intentionally discriminated against her on the basis of her transgender status, and accordingly Plaintiff's claim on this basis fails.  However, in so far as Plaintiff alleges that her rights under the Equal Protection Clause were violated since Section R.13 provides that transgender inmates "will receive housing assignments consistent with their *biological* sex," she raises a claim similar to the challenges raised against the jail policies in *Tates*.  ECF No. 43-2 at 9 (emphasis added).  The *Tates* court found that a certain classification applied to all transgender male inmates resulted in the *de facto* effect of discriminatory treatment; similarly, here, by automatically assigning housing on the basis of a detainee's *biological* sex, the jail treats transgender individuals like Plaintiff differently than cisgender female arrestees or transgender female arrestees who have undergone gender reassignment surgery.  Further factual development as to the results of this policy would be useful in evaluating the *de facto* results of such housing assignments and accordingly, the Court declines to dismiss this claim at this time.

As to Nurse Chow, Defendants argue that her determination was only based on Plaintiff's general health and therefore does not constitute intentional discrimination. Plaintiff bases her allegations on Nurse Chow's determination that Plaintiff was "fit for jail" per the requirements in Section Q and identification of Plaintiff as "Male."  ECF No. 47 at 19; FAC ¶ 112.  Section Q of the County Policies requires that "[a]fter completing the questioning, the registered nurse conducting the screening shall determine if the inmate is 'Fit for Jail.' "  ECF No. 43-2 at 13.  Plaintiff argues that by making this determination of "fit for jail," Nurse Chow treated Plaintiff differently than other cisgender females or a transgender females who have undergone gender reassignment surgery.  However, unlike Section R.13, Section Q  does not mandate certain treatment on the basis of "biological sex" or any other marker of gender identity.  Rather, Nurse

Chow's conduct and the applicable policy do not evince any potential intentional discrimination against Plaintiff on the basis of her transgender identity.  Accordingly, the motion to dismiss this claim with respect to Nurse Chow is **GRANTED**.

In sum, the Court **DENIES** the Motion to Dismiss as to the County Defendants and **GRANTS** it as to Nurse Chow.

## VI.    Fourteenth Amendment—Procedural Due Process

California grants arrestees (persons detained in custody post-arrest, but pre-arraignment) the right to place three telephone calls.  *See* Cal Penal Code § 851.5. According to the Ninth Circuit, this state-created right is one of "real substance" entitled to constitutional due process protections.  *See Carlo v. City of Chino*, 105 F.3d 493, 500 (9th Cir. 1997).  An arrestee therefore must receive notice of the right to telephone calls and be denied a requested immediate telephone call only in the case of physical impossibility.  *See id.* at 497.

Plaintiff alleges that Officer Zajda violated § 851.5 by failing to provide her with the "opportunity to make three completed telephone calls" within the time period contemplated by the statute.  ECF No. 31 ¶ 213.  Defendants argue that Plaintiff did not allege that she "communicated a desire to use a telephone to Zajda."  ECF No. 42-1 at 17.

In reviewing a Rule 12(b)(6) motion to dismiss, this Court must accept as true all facts alleged in the complaint and draws all reasonable inferences in favor of the claimant.  *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  Plaintiff adequately alleges that she was not given the opportunity to make a telephone call while in Defendant Zajda's custody.  Accordingly, the Court declines to dismiss Plaintiff's Due Process claim at this time.

/ / /

3:20-cv-00246-GPC-AGS

## VII.   Fourteenth Amendment—Substantive Due Process

Plaintiff alleges that City and County Defendants violated her substantive due process rights by confining her, as a pretrial detainee, in conditions that amounted to punishment and by also holding her incommunicado.  FAC ¶ ¶ 237-248.  City Defendants argue that these actions were taken by County employees and that Plaintiff failed to plead any individual action by Officer Zajda that violated Plaintiff's due process rights. ECF No. 42-1 at 18-19.  County Defendants argue that even taking Plaintiff's allegations as true, the temporary exposure to unsanitary conditions does not give rise to a constitutional violation.  ECF No. 43-1 at 20.  The Court addresses each argument in turn.

In examining the conditions of pretrial detention, the question "is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id*. (citations omitted). "Absent a showing of an expressed intent to punish," a court must consider whether "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective," and thus, without more, non-punitive. *Id*. at 538-39 (citations omitted).

### a.  City Defendants

City Defendants do not contest that Plaintiff's substantive due process rights may have been violated by the conditions of her confinement but instead argue that the alleged constitutional violations were all committed by County employees.  ECF No. 42-1 at 19. Plaintiff contends that Officer Zajda can be held liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to

1    inflict the constitutional injury."  ECF No. 44 at 25.

2        Plaintiff is correct that "direct, personal participation is not necessary to establish

3    liability for a constitutional violation."  *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.

4    1978).  "The requisite causal connection can be established . . . also by setting in motion

5    a series of acts by others which the actor knows or reasonably should know would cause

6    others to inflict the constitutional injury." *Id.* at 743–44; *see also Stevenson v. Koskey*,

7    877 F.2d 1435, 1439 (9th Cir. 1989) (causation is established where officer participates in

8    the affirmative acts of another that, acting concurrently, result in deprivation of federal

9    rights).  The critical question is whether it was reasonably foreseeable that Officer

10    Zajda's actions would lead to the rights violations alleged to have occurred during Vuz's

11    detention.  *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir. 1994)

12    (where official did not directly cause a constitutional violation, plaintiff must show the

13    violation was reasonably foreseeable to him).

14        Here, Plaintiff has pled no facts that would allow the Court to infer that the

15    subsequent rights violations alleged by Plaintiff were reasonably foreseeable to Officer

16    Zajda.  Plaintiff only alleges that "Zajda's affirmative act of transporting Ashely to SDCJ

17    for booking set in motion the acts and omission" that constitute the substantive due

18    process allegation. ECF No. 33 ¶ 241.  It is not enough that Officer Zajda arrested

19    Plaintiff and set in motion the chain of events that led to the alleged rights violation.

20    Plaintiff must plead facts that allow the inference that this course of events was

21    reasonably foreseeable by the Defendant.  *Kwai Fun Wong v. U.S.*, 373 F.3d 952 (9th Cir.

22    2004) (upholding dismissal of complaint where Plaintiff failed to plead how the actions

23    of government officials "could foreseeably have caused the First and Fourth Amendment

24    violations [Plaintiff] is alleged to have suffered while in detention").  Accordingly, the

25

26                                               31

27

28

1   Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's substantive due process

2   claims.

3       **b.  County Defendants**

4          The County argues that Plaintiff's temporary exposure to unsanitary conditions

5   does not give rise to a constitutional violation, citing *Anderson v. Cty. of Kern*, 45 F.3d

6   1310, 1314 (9th Cir.), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995)

7   and *Hutto v. Finney*, 437 U.S. 678 (1978).  However, in both *Anderson* and *Hutto*, the

8   courts evaluated conditions of confinement as per the applicable Eighth Amendment

9   standards for convicted prisoners.  *Anderson*, 45 F.3d at 1315; *Hutto*, 437 U.S. at 685.

10  More recently, the Ninth Circuit has clarified that the standard for pretrial detainees

11  "differs *significantly* from the standard relevant to convicted prisoners, who may be

12  subject to punishment so long as it does not violate the Eighth Amendment's bar against

13  cruel and unusual punishment."  *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir.

14  2008) (emphasis added).  The "more protective" Fourteenth Amendment standard applies

15  to conditions of confinement for pretrial detainees and requires the government to do

16  more than provide minimal necessities.  *Jones v. Blanas,* 393 F.3d 918, 931 (9th

17  Cir.2004).  "[T]he Eighth Amendment provides too little protection for those whom the

18  state cannot punish."  *Hydrick v. Hunter,* 500 F.3d 978, 994 (9th Cir. 2007).

19         To evaluate the constitutionality of pretrial detention conditions that are not alleged

20  to violate any express constitutional guarantee, a district court must determine whether

21  those conditions amount to punishment of the detainee.  *Bell,* 441 U.S. at 535; *Pierce*,

22  526 F.3d at 1205; *Demery v. Arpaio,* 378 F.3d 1020, 1029 (9th Cir. 2004).  "[T]o

23  constitute punishment, the harm or disability caused by the government's action must

24  either significantly exceed, or be independent of, the inherent discomforts of

25

26                                                                    32

27

28                                                                                          3:20-cv-00246-GPC-AGS

confinement." *Demery v. Arpaio,* 378 F.3d 1020, 1030 (9th Cir. 2004).    The Supreme Court has explained that the determination of whether a particular condition or restriction imposes punishment in the constitutional sense will generally turn on whether an alternate purpose is reasonably assignable:

> [I]f a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell*, 441 U.S. at 539.  Legitimate nonpunitive governmental objectives include "maintaining security and order" and "operating the [detention facility] in a manageable fashion." *Id*. at 540 n. 23.  Retribution and deterrence are not legitimate governmental objectives.  *Demery*, 378 F.3d at 1030–31.  The cost or inconvenience of providing adequate conditions is not a defense to the imposition of punishment. *See Spain v. Procunier*, 600 F.2d 189, 199–200 (9th Cir. 1979).  Courts have previously found that plumbing in disrepair and deprivation of basic elements of hygiene rise to the level of constitutional violations on the basis that such conditions "deprive[] inmates of basic elements of hygiene and seriously threaten[] their physical and mental well-being." *Graves v. Arpaio*, No. CV-77-0479-PHX-NVW, 2008 WL 4699770, at *8 (D. Ariz. Oct. 22, 2008).  *See also Hoptowit v. Spellman*, 753 F.2d 779, 783–84 (9th Cir. 1985) ("Failure to provide adequate cell cleaning supplies . . . deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health").

As to the second cell in which Plaintiff was confined, Plaintiff alleges a number of conditions that deprived her of basic elements of hygiene.  The Court notes that Plaintiff alleges that she was held in this cell for only a few hours, and that "courts may consider

3:20-cv-00246-GPC-AGS

the length of time that the prisoner must go without these benefits" in weighing whether certain conditions constitute an "unwarranted infliction of pain." *Graves*, 2008 WL 4699770, at *10. However, at this juncture it would be premature to dismiss this claim without further factual development as to these conditions and the Defendants' proffered justifications for these conditions. Accordingly, considering the facts in the light most favorable to the Plaintiff, she has sufficiently alleged that the condition of her detention failed to meet minimally sanitary standards, and that such conditions were not reasonably related to legitimate governmental objectives. The Court declines to dismiss this claim against the County Defendants at this time.

## VIII.  Conspiracy - 42 U.S.C. § 1985 (3)

Defendants move to dismiss Plaintiff's claim for a violation of 42 U.S.C. § 1985 (3). Section 1985 prohibits conspiracies to interfere with an individual's civil rights. To state a cause of action, plaintiff must allege: (1) a conspiracy; (2) to deprive any person or class of persons of the equal protection of the laws; (3) an act done by one of the conspirators in furtherance of the conspiracy; and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States. *Gillispie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). The Ninth Circuit has held that a claim under Section 1985 must allege specific facts to support the allegation that defendants conspired together. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim. *Id.*

Defendants argue that Plaintiff fails to adequately plead a claim for conspiracy because she does not allege facts to support the allegation. ECF No. 42-1 at 23. Plaintiff argues that a conspiracy can be inferred from conduct does not require "evidence of an

express agreement."  ECF No. 44 at 29.  Plaintiff argues that the Court can infer from the alleged lack of probable cause in Vuz's arrest that the parties conspired together to violate her constitutional rights and argues that Officer Zajda's failure to consider exculpatory evidence regarding Vuz's innocence allows the inference that he was part of the conspiracy to deprive Plaintiff of her constitutional rights.  *Id.*

The touchstone of adequate pleading of conspiracy is the pleading of facts that, if true, create a plausible statement of the claim.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a claim for conspiracy, a plaintiff must show "an agreement or meeting of the minds to violate [her] constitutional rights."  *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).  A conspiracy may be inferred from specific behavior that is "unlikely to have been undertaken without an agreement."  *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999); *see also Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (holding that "[a] conspiracy can be inferred from conduct and need not be proven by evidence of an express agreement.").  However, to state a claim, the plaintiff must do more than plead independent parallel conduct on the part of the defendants.  *See Twombly*, 550 U.S. at 554.

Here, Plaintiff has only alleged parallel conduct and legal conclusions.  Plaintiff alleges that Officer Zajda conspired with the Gossip Grill employees to "violate Ashley's Fourth Amendment rights to be free from unreasonable seizure."  ECF No. 33 ¶ 256.  The FAC alleges that the parties had "a common objective of having Ashley arrested" because of her transgender status.  *Id*. ¶¶ 257-59.  These are legal conclusions with no

factual basis and do not support a claim for civil conspiracy.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's conspiracy claims.

## IX.    State Law Claims

Plaintiff brings a number of state law claims against County Defendants for violations of Cal. Gov. Code § 815.6, Cal. Penal Code § 851.5 (FAC ¶¶ 261-276), and Cal. Gov. Code § 52.1 ("Bane Act").  FAC ¶¶ 286-291.  The Court addresses each in turn.

### a.  Cal. Gov. Code §§ 815.6, 851.5

Plaintiff alleges that the County violated its duties under Cal. Gov. Code § 815.6, by failing to provide clean bedding, linens, mattress, towels, blankets or sleeping bag, as required by the California Code of Regulations ("CCR"), Title 15, Sections 1270 and 1272.  FAC ¶¶ 263-66.

Section 1270 of Title 15 provides:

> The standard issue of clean suitable bedding and linens, for each inmate entering a living area who is expected to remain overnight, shall include, but not be limited to: (a) one serviceable mattress which meets the requirements of Section 1272 of these regulations; (b) one mattress cover or one sheet; (c) one towel; and (d) one blanket or more depending upon climatic conditions.  Two blankets or sleep bag may be issued in place of one mattress cover or one sheet.  Temporary Holding facilities which hold persons longer than 12 hours shall meet the requirements of (a), (b) and (d) above.

15 CCR § 1270.  Section 1272 of Title 15 provides regulations about the type of mattress that must be provided.  15 CCR § 1272.  Cal. Penal Code § 851.5 states, "Immediately upon being booked and, except where physically impossible, no later than three hours after arrest, an arrested person has the right to make at least three completed telephone calls."  Defendants argue that Plaintiff has failed to allege a breach of this duty since she has not claimed that she was denied access to a telephone within three hours of her arrest

36

and has instead only alleged that once she communicated her desire to use a telephone, she was transferred to a cell with a telephone.

County Defendants claim they are not liable for the aforementioned conduct given the immunity provided by "[a]n injury to any prisoner" except as provided by § 844.6. Cal. Gov. Code § 844.6. The Court agrees. Section 844.6 plainly states that "a public entity is not liable for . . . [a]n injury to any prisoner" except as provided in specific enumerated sections. California courts have accordingly denied claims made by pretrial detainees seeking redress for their conditions of confinement on the basis that the County was immune to claims made by prisoners. *See, e.g., Sahley v. San Diego County*, 138 Cal. Rptr. 34, 69 (Ct. App. 1977) (where preconviction detainee had been booked and arraigned and was awaiting trial, he was a "prisoner," and was therefore not entitled to recover from county for injuries suffered when he slipped and fell in shower at county jail).

Plaintiff argues that immunity under Section 844.6 solely protects against claims for monetary damages. The Court disagrees. The Legislative Committee Comments state clearly that under Section 844.6, immunity is "provided to public entities by this section prevails over all other provisions of the statute . . . the public entity is immune from liability for injuries to prisoners . . . except that the public entity must pay judgments based on malpractice against public employees licensed in one of the healing arts." Leg. Comm. Cmts., Cal. Gov't Code § 844.6 (West).

Plaintiff argues that Rule 12(g) prohibits County Defendants from relying on Section 844.6 since they failed to raise this argument in their motion to dismiss Plaintiff's original complaint. ECF No. 47 at 23. Plaintiff "emphasizes that she does not contend that the Cal. [Gov. Code] § 844.6 argument is waived forever—only that Movants cannot

3:20-cv-00246-GPC-AGS

rely on it in a pre-answer challenge to the FAC" and argues that by failing to raise the Section 844.6 argument in their initial motion to dismiss, Defendants denied Plaintiff the opportunity to amend her complaint accordingly.  ECF No. 47 at 24.  Defendants counter that the Ninth Circuit has adopted a flexible interpretation of Rule 12(g)(2) under the guidance of Rule 1—namely, to "to secure the just, speedy, and inexpensive determination of every action and proceeding." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).  The Court agrees that denying Rule 12(b)(6) motions and relegating Defendants to procedural avenues specified in Rule 12(h)(2) would "produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.*  Further, given that the Court is providing Plaintiff leave to amend her complaint, Plaintiff's concerns about amending her pleading are rendered moot.  Accordingly, the Court grants Defendants' motion to dismiss on the basis of immunity under Section 844.6.

### b.  Cal. Gov. Code § 52.1 ("Bane Act")

"The essence of a Bane Act claim is that the defendant, by the specified improper means (*i.e.*, 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 955-56 (2012) (citations omitted).  "The legislative history of section 52.1, enacted in 1987, makes clear that the crucial motivation behind passage of section 52.1 was to address the increasing incidence of hate crimes in California." *Id.* at 956 (citing Stats.1987, ch. 1277, § 3, p. 4544; see (A.B.63)).  "A defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Id.*

Here, Plaintiff has only made cursory allegations without any factual basis in claiming that Nurse Chow or the County Does engaged in coercion or intimidation. Accordingly, this claim is dismissed with leave to amend.

**X.    Does 31-34**

County Defendants argue that County employees Does 31, 32, 33, and 34 should be dismissed because no facts have been alleged to support liability.  ECF No. 43-1 at 29-31.  Plaintiff disagrees.  ECF No. 47 at 26-27.

As to Doe 31, Defendants argue that Plaintiff's allegations that Doe 31 failed to permit Plaintiff to make telephone calls upon booking and that Doe 31 failed to produce a probable cause declaration in response to a public record request are insufficient.  ECF No. 43-1 at 29-30.  As to Does 32 and 33, Defendants argue that Plaintiff has only alleged that they were responsible for making housing assignments and transferring Plaintiff to an unclean cell.  *Id.* at 30.  Finally, as to Doe 34, Defendants argue that Plaintiff's sole allegation is based on Doe 34's decision to take an "extended lunch break" for the purpose of delaying her release.  *Id.* at 31.

Generally, on a Rule 12 motion, "moving defendants [] ha[ve] no standing to seek dismissal of the action as to the nonmoving defendants."  *Mantin v. Broad. Music, Inc*., 248 F.2d 530, 531 (9th Cir. 1957).  Courts have dismissed complaints as to all defendants, even where only a few defendants move to dismiss, where defendants were similarly situated and plaintiff had ample notice and opportunity to oppose the motion to dismiss, *see, e.g., Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund v. Canny*, 876 F. Supp. 14, 17 (N.D.N.Y. 1995), or where the non-moving defendant was only sued because it was alleged to have controlled the defendant whose dismissal motion was granted.  *See, e.g., Piemonte v. Chicago Bd. Options Exch., Inc*., 405 F.

Supp. 711, 718 (S.D.N.Y. 1975).  Here, Does 31-34 are not similarly situated to the County Defendants and the County Defendants' motion to dismiss has not been granted in full.  Accordingly, although the Court recognizes that Plaintiffs' allegations are cursory and "threadbare recitals," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), granting dismissal of non-moving defendants on the basis of the County Defendants' motion would be inappropriate.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims against Doe Defendants is **DENIED**.[6]

## XI.   Rule 12(f)

Defendants seek to strike Plaintiff's allegations set forth in the section "County Jail Facilities" in the FAC regarding the conditions at SDCJ and Las Colinas Detention Facility ("LCDF"); allegations regarding a Hepatitis A outbreak as immaterial and impertinent; and Plaintiff's punitive damages claim.  ECF No. 43-1 at 33-34.

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (quotation marks, citation, and first alteration omitted), *rev'd on other grounds by Fogerty v.*

_____

[6] Defendants argue that Does 35 through 45 should be dismissed in accordance with Rule 4(m) since Plaintiff has not served these Doe Defendants within the required 90-day time period.  ECF No. 43-1 at 32.  Plaintiff does not contest.  Accordingly, Defendants' motion to dismiss Does 35 through 45 is granted.

*Fantasy, Inc.*, 510 U.S. 517 (1994).  "However, motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation."  *Griffin*, 2010 WL 4704448, at *4 (citing *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992)).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fogerty*, 984 F.2d at 1527 (quoting 5C Fed. Prac. & Proc. Civ. § 1382).  "'[I]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Id.* (quoting 5C Fed. Prac. & Proc. Civ. § 1382).

Here, it is not clear that Plaintiffs' allegations regarding the County Jail Facilities have no bearing whatsoever on the subject matter of this litigation.  "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike."  *Park v. Welch Foods, Inc.*, No. 5:12-CV-06449-PSG, 2014 WL 1231035, at *1 (N.D. Cal. Mar. 20, 2014).  Accordingly, the Court declines to strike these allegations.

As to the punitive damages claim, Defendants argue that Plaintiffs' allegations are insufficient, but "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."  *Whittlestone, Inc.*, 618 F.3d at 974–75.  Accordingly, Defendants' request is denied.

## XII.  Injunctive Relief

Defendants argue that Plaintiff's prayer for injunctive relief must be dismissed Defendants bring this motion under Rule 12(b)(6)—for "failure to state a claim upon which relief can be granted."  The Advisory Committee Notes explain that Rule 12(b)(6) permits motions to dismiss for "failure of a pleading to state a cause of action."  Rule

3:20-cv-00246-GPC-AGS

12(b)(6) Advisory Committee's Notes.  Neither party cites—and the Court has not found—case law wherein Rule 12(b)(6) was utilized to attack the type of remedy sought by the plaintiff, rather than the cause of action.  Accordingly, Defendants' request is denied.

## XIII.  Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the County and City Defendants' Motions to Dismiss.  ECF Nos. 42, 43.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.  The Court **GRANTS** Plaintiff thirty days to file an amended complaint, to cure the deficiencies outlined above if she can do so.

**IT IS SO ORDERED.**

Dated:  July 30, 2020

Hon. Gonzalo P. Curiel
United States District Judge

42

3:20-cv-00246-GPC-AGS