1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  Ashley R. Vuz, | Case No.:  3:20-cv-00246-GPC-AGS |
| 12                                    Plaintiff, | **ORDER:** |
| 13  v. | |
| 14  DCSS III, INC., a California corporation | **(1) GRANTING CITY DEFENDANTS' MOTION TO DISMISS;** |
| 15  doing business as Gossip Grill; Dwayne Wynne, an individual; County of San | |
| 16  Diego, a political subdivision of the State of California; Emily Chow, an individual; | **(2) GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS; AND** |
| 17  City of San Diego, a municipal corporation; Matthew Zadja, an | |
| 18  individual; and Doe Nos. 1 through 45, individuals, | |
| 19 | |
| 20                                  Defendants. | **(3) DENYING COUNTY DEFENDANTS' MOTION TO STRIKE.** |
| 21 | |
| 22 | **[ECF Nos. 70, 71.]** |

23
24
25
26
27
28

Defendants City of San Diego and Matthew Zajda[1] (collectively, "City Defendants") and Defendants County of San Diego and Emily Chow (collectively, "County Defendants") move to dismiss claims raised in Plaintiff Ashley Vuz's Second Amended Complaint ("SAC").  ECF Nos. 70, 71.  County Defendants additionally move to strike portions of the SAC.  ECF No. 71.  The motions have been fully briefed.  ECF Nos. 84, 85, 87, 88.  The Court finds this matter suitable for disposition without oral argument pursuant to Civ. L.R. 7.1(d)(1).  For the reasons that follow, the Court GRANTS City Defendants' motion to dismiss; GRANTS in part and DENIES in part County Defendants' motion to dismiss; and DENIES County Defendants' motion to strike.

## I.    BACKGROUND

### A.    Procedural History

On February 7, 2020, Plaintiff Ashley R. Vuz ("Plaintiff"), filed a complaint in the instant action.  ECF No. 1.  On April 17, 2020, Plaintiff filed a First Amended Complaint.  ECF No. 33 ("FAC").  On July 30, 2020, the Court granted in part and denied in part City Defendants' and County Defendants' motions to dismiss, granting Plaintiff leave to amend.  ECF No. 65.  On August 31, 2020, Plaintiff filed the SAC.  ECF No. 68 ("SAC").  Plaintiff alleges violations of federal and state civil rights laws, as well as counts for various common law causes of action.  *Id.*  Plaintiff names as Defendants DCCS III, Incorporated, dba Gossip Grill; the City of San Diego; the County of San Diego; Officer Matthew Zajda; Nurse Emily Chow; several individual employees of Gossip Grill; and a number of Doe defendants.  *Id.*  On September 14, 2020, Defendants City of San Diego, Zajda, County of San Diego, and Chow filed the instant motions to

---

[1] The caption lists the Defendant's surname as "Zadja," but the pleading papers refer to this Defendant's surname as "Zajda."

dismiss certain claims in the SAC for failure to state a claim, and County Defendants moved to strike portions of the SAC.  ECF Nos. 70, 71.

### A.    Factual Background

The following facts are taken from the allegations in Plaintiff's SAC.  Plaintiff is a transgender woman.  SAC ¶ 3.  She began her gender transition socially in 2015, coming out as transgender to her parents and friends.  *Id.*  She adopted the use of female pronouns and has taken hormones and undergone several surgeries to feminize her appearance.  *Id.*  On October 11, 2016, Judge Mark A. Borenstein of the Los Angeles County Superior Court signed a decree ordering that Plaintiff's gender be changed from male to female and that her name be changed to "Ashley."  *Id.*  Plaintiff has since changed her driver's license, passport, and social security card to identify herself as female.  *Id.*  Plaintiff currently takes prescription medication as part of her gender transition.  *Id.* ¶ 104.

This action arises out of events that occurred up to, during, and following Plaintiff's arrest outside of the bar and restaurant Gossip Grill on the night of December 29, 2018.  *Id.* ¶¶ 58–143.  As recited in greater detail in the Court's previous order, ECF No. 65 at 3–4, Plaintiff alleges that Gossip Grill employees harassed and attacked her and called the police to report a robbery and falsely accused Plaintiff.  *Id.* ¶¶ 65–73, 77–81, 83–88, 99.  Defendant Zajda, a San Diego Police Department officer, responding to the call reporting the robbery, arrived at the scene along with Does 16 through 30 ("City Does") and intercepted Plaintiff about a block away from Gossip Grill.  *Id.* ¶¶ 14, 89.  Defendant Zajda immediately arrested Plaintiff.  *Id.* ¶ 90.  Plaintiff maintains that Defendant Zajda had no probable cause for the arrest.  *Id.* ¶ 94.  Defendant Zajda and City Does learned during the course of the arrest that Plaintiff is transgender, and Defendant Zajda recorded Plaintiff's sex as female in the arrest report.  *Id.* ¶ 100.

Defendant Zajda then transported Plaintiff to be booked into jail, and during the car ride Plaintiff informed him that she had not undergone gender reassignment surgery and maintained traditionally-male genitalia. *Id.* ¶ 101. Defendant Zajda informed Plaintiff that he was transporting her to a men's jail, San Diego County Jail ("SDCJ"), because of her genitalia, and that this was required per policy. *Id.* ¶ 103.

In the early morning of December 30, 2018, Plaintiff was booked into SDCJ for second degree felony robbery with a bail amount set at $50,000. *Id.* ¶ 105. As part of the intake process, Defendant Zajda completed a Form J-15, indicating that Plaintiff's sex is "male." *Id.* ¶¶ 106, 107. The SDPD policies are San Diego City policies, and the San Diego Police Department Policy Manual ("SDPD Policy Manual") includes a section on "Police Interaction with Transgender Individuals," Training Bulletin 14-05 ("TB 14-05"). *Id.* ¶¶ 41, 42, 44. This section provides, *inter alia*, that "[a]n individual's lower anatomy or surgical status determines which jail facility the individual is booked into; no other changes or surgeries apply." *Id.* ¶ 45. Plaintiff alleges that this policy establishes a test for womanhood that the overwhelming majority of transgender women will fail, as many transgender individuals do not undergo surgery to change their primary sex characteristics for a variety of reasons unrelated to the sincerity or legitimacy of their gender identity. *Id.* ¶¶ 30, 31, 46.

The policies of the Sheriff's Department—Policy and Procedure Manual ("SDSD-MPP") and the Detention Services Bureau-Manual of Policies and Procedures (DSB-MPP)—are County policies. *Id.* ¶¶ 47-49. These policies govern the intake process for individuals who arrive at the County jail facility after being arrested. *Id.* ¶ 51. Section M.9 of the SDS-MPP provides that arrestees to be housed in a County detention facility must be medically screened by a registered nurse, who must conduct a "comprehensive assessment of the medical and psychiatric needs of the inmate and record the responses in [the Jail Information Management System]." *Id.* ¶ 53. After this screening, arrestees are

4

taken to a holding area to await the Jail Population Management Unit's ("JPMU")

determination of appropriate housing assignments. *Id.* ¶ 54.

During the booking process, Plaintiff underwent a medical screening by Defendant

Chow, a nurse at SDCJ. *Id.* ¶ 110. Plaintiff informed Defendant Chow that she is

transgender. *Id.* ¶ 111. In Defendant Chow's report, she documented that Plaintiff

identifies as a male-to-female transgender individual, found her fit for jail at SDCJ, and

noted "Sex: M". *Id.* ¶ 112. Plaintiff was not provided with a Form J-350, the Voluntary

Gender Identity Statement of Preference Form. *Id.* ¶¶ 57, 109. Plaintiff told Defendant

Chow that she was required to take certain medications for maintaining her gender

identity. *Id.* ¶ 113. Plaintiff never received this medication during the booking process.

*Id.* Plaintiff additionally states that an unidentified number of Does 31 through 45

("County Does") required her to remove and hold her shoes, that she was not provided

with any footwear while detained and had to remain barefoot, and that County Does

seized $64.00 in cash which was never returned. *Id.* ¶¶ 116–18.

Plaintiff was not housed with the general population at SDCJ and was instead

placed in administrative segregation ("ad-seg") as a result of the custody level assigned

by County Does 31 and 33. *Id.* ¶ 119. In the first cell where she was detained, Plaintiff

was not provided access to a telephone, and she communicated her desire to use a

telephone to the SDCJ employees. *Id.* ¶¶ 121, 125. The SDCJ staff transferred Plaintiff

to a second cell that had a telephone. *Id.* ¶¶ 125, 128. In this second cell, Plaintiff

alleges that the walls were covered in feces, and she restricted her movements inside the

cell so as to avoid making contact with any of the cell's feces-covered surfaces. *Id.* ¶¶

125, 129, 130. She further alleges that the toilet inside this cell was covered in used toilet

paper and that she was not provided with any clean toilet paper, a bed, mattress, or

sleeping bag throughout the duration of her detention in the second cell. *Id.* ¶¶ 125-27,

131. Plaintiff used the phone in the second cell to arrange for her bail payment. *Id.* ¶

133.  Before she was released, Plaintiff was escorted from her cell to a waiting area within the jail for final processing, at which point a Doe defendant responsible for processing inmates (Doe 34) took an extended lunch for one to two hours and laughed at Plaintiff before processing her for release.  *Id.* ¶ 135.  Plaintiff alleges Doe 34's delay in processing her release was because of Plaintiff's transgender status.  *Id.*  Plaintiff was ultimately released on December 30, 2018.  *Id.*

Plaintiff alleges that she developed influenza due to her arrest and detention.  *Id.* ¶ 144.  After she was released, Plaintiff sought out and received the Hepatitis A vaccine due to her concern that she was potentially exposed to Hepatitis A while detained given the outbreak in San Diego at that time.  *Id.*  Plaintiff further alleges that as a result of her arrest and detention, she has been diagnosed with Post Traumatic Stress Disorder and has suffered a number of emotional injuries—including, anxiety, recurrent nightmares, sadness, apathy, heightened gender dysmorphia, and increased fear of law enforcement.  *Id.* ¶¶ 144–46.  Consequently, Plaintiff has avoided returning to San Diego to visit her mother.  *Id.* ¶ 144.

Plaintiff now seeks damages against all Defendants.  Plaintiff asserts a number of claims for relief against City Defendants and County Defendants, mostly constitutional claims under 42 U.S.C. § 1983.  Within each claim for relief, Plaintiff sets out different theories for relief that she identifies as "counts."  The following table identifies the causes of action and counts alleged against City and County Defendants in the SAC:[2]

\ \ \

\ \ \

\ \ \

---

[2] The causes of action, counts, and defendants for each count that are at issue in the instant motions to dismiss and strike are reflected in bold.

| Claim for Relief | Counts | Defendants[3] |
|---|---|---|
| **1) 1st Amendment** | **Count 1: Burden on protected expression** | **City, Zajda** |
| | **Count 2: Retaliation** | **County, Chow, County Does, City, Zajda,** City Does |
| | Count 3: Telephone Access | Zajda, Does 31-33 |
| 2) 4th Amendment | Count 1: Arrest by SDPD | Zajda, City Does |
| | Count 2: Detention at SDCJ | Doe 31 |
| **3) 14th Amendment – Equal Protection** | Count 1: TB-05 (Direct Path/*Monell*) | City |
| | **Count 2: Transportation to SDCJ** | **Zajda,** City |
| | Count 3: Booking at SDCJ | Doe 31 |
| | Count 4: Classification and Housing | Does 32-34, County |
| 4) 14th Amendment – Procedural Due Process | | Zajda, Does 31-33 |
| **5) 14th Amendment – Substantive Due Process** | **Count 1: Conditions of confinement** | County, **Chow, County Does, Zajda** |
| | Count 2: Incommunicado detention | Zajda, Does 31-32 |
| **7) Bane Act – Cal. Gov. Code § 52.1** | | **County Does** |

In the instant motion, Defendant Zajda moves to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 1" (burden on protected expression claim) and "Count 2" (retaliation claim); the Third Claim for Relief alleging Fourteenth Amendment Equal Protection as to "Count 2" (transportation claim); and the Fifth Claim for Relief alleging Fourteenth Amendment substantive due process violations as to "Count 1" (conditions of confinement claim).  Defendant City of San Diego moves to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 1"

---

[3] Only municipal defendants only are reflected in this table. Claims for relief against private defendants are omitted.

7

(burden on protected expression claim) and "Count 2" (retaliation claim); and the Third Claim for Relief alleging Fourteenth Amendment Equal Protection violations as to "Count 2" (transportation claim).  Plaintiff does not oppose dismissal of "Count 2" (transportation claim) of the Fourteenth Amendment Equal Protection claim against Defendants Zajda and City of San Diego.  ECF No. 84 at 15.  Accordingly, the Court GRANTS the motion to dismiss "Count 2" of the Fourteenth Amendment Equal Protection claim.

Defendant Chow moves to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 2" (retaliation claim); and the Fifth Claim for Relief alleging Fourteenth Amendment substantive due process violations as to "Count 1" (conditions of confinement claim).  Defendant County of San Diego moves to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 2" (retaliation claim).  Plaintiff does not oppose dismissal of "Count 2" (retaliation claim) of the First Amendment claim against Defendant County of San Diego.  ECF No. 85 at 17. Accordingly, the Court GRANTS the motion to dismiss "Count 2" of the First Amendment claim against Defendant County.

County Defendants also move to strike, and alternatively to dismiss, all claims against County Does 35 through 45.  Against County Does, excluding claims solely against Does 31 through 34, Plaintiff alleges the First Claim for Relief alleging First Amendment violations as to "Count 2" (retaliation claim); the Fifth Claim for Relief alleging Fourteenth Amendment substantive due process violations as to "Count 1" (conditions of confinement claim); and the Seventh Claim for Relief alleging violations of the Bane Act, Cal. Gov. Code § 52.1.

## II.   LEGAL STANDARD

Defendants move to dismiss Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  A defendant may move to dismiss a complaint

for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would

be futile, the Court may deny leave to amend.  *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

Defendant County also moves to strike the allegations in the SAC against County Does 35 through 45.  Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are viewed negatively because of the limited import of the pleadings under the Federal Rules."  *Netflix, Inc. v. Blockbuster, Inc.*, No.C06-02361WHA, 2006 WL 2458717, at *8 (N.D. Cal. Aug. 22, 2006).  "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Id.* (citation and internal quotations omitted).

## III.   DISCUSSION

### A.   First Amendment Claims

City Defendants move to dismiss Plaintiff's claim that her transportation to SDCJ unconstitutionally burdened her First Amendment-protected expression of her gender identity (First Claim for Relief, "Count 1" burden on protection expression claim).  City Defendants and Defendant Chow also move to dismiss Plaintiff's claim that her transportation to, and acceptance for booking into, SDCJ constitutes retaliation against her for expressing her gender identity (First Claim for Relief, "Count 2" retaliation claim).  Plaintiff opposes. The Court will address each First Amendment claim in turn.

#### i.   Burden on protected expression

The First Amendment's protection of speech extends to messages "delivered by conduct intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative."  *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 294 (1984).  To plead a claim arising from the abridgment of expressive conduct, a plaintiff must first allege conduct that involved (1) "an intent to

convey a particularized message" and (2) a "great" "likelihood . . . that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 410–11 (1974)).

In the SAC, Plaintiff alleges that Defendant Zajda's act of transporting Plaintiff to SDCJ based on her expression of her gender in a manner that is traditionally female and her statement that she had not undergone surgery to revise her genitalia burdens her First Amendment rights, and that Defendant Zajda's act was pursuant to the policy of Defendant City.  City Defendants argue that Plaintiff has not pled facts sufficient to show that her gender expression is expressive conduct protected by the First Amendment, and that Plaintiff has not alleged that her right to express her express her gender was burdened.  Plaintiff counters that she has adequately alleged that her conduct, including the way she dresses and the physical appearance she presents to the world, is intended to convey, and is understood as conveying, the message that she is a woman and does not conform to traditional gender norms, and that she need not show actual suppression of her gender expression to state a claim.  Defendant Zajda also argues he is entitled to qualified immunity.

In its order granting in part and denying in part Defendants' motion to dismiss, the Court dismissed several of Plaintiff's First Amendment claims, finding that Plaintiff had not pled facts sufficient to show conduct beyond the mere act of existing with her gender identity, which is not inherently expressive.  ECF No. 65 at 19-20.  In the FAC, Plaintiff had merely alleged that she expressed her gender identity "through her conduct."  FAC ¶ 149.  Plaintiff has revised her First Amendment claims in the SAC to specify that she conveys the message of her feminine gender identity, contrary to any masculine gender identity that may be forced upon her, by wearing women's apparel, styling herself in a feminine manner, undergoing cosmetic surgeries to feminize her appearance, and maintaining feminine mannerisms.  SAC ¶ 150.  *Cf. Tinker v. Des Moines Indep. Cmty.*

*Sch. Dist.*, 393 U.S. 503, 505 (1969) ("[T]he wearing of an armband for the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment"); *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 428 (9th Cir. 2008) (suggesting clothing used to "express [plaintiff's] individuality" may be sufficiently communicative to be covered by the First Amendment); *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 440 (5th Cir. 2001) ("[A]n individual's choice of attire may be endowed with sufficient levels of intentional expression to elicit First Amendment shelter.").  As Plaintiff indicates in her complaint, changing one's appearance to align with traditionally male or female traits is a means by which some transgender people not only begin to live according to their gender identity, but also convey their gender identity to others.  SAC ¶ 29–30.  The reasoning of the district court in *McMillen v. Itawamba County School District* supports, rather than undermines, Plaintiff's argument.  There, the district court found that the plaintiff intended to communicate her view "that women should not be constrained to wear clothing that has traditionally been deemed 'female' attire," a separate statement from the message she intended to convey by bringing her girlfriend to prom.  *McMillen v. Itawamba Cty. Sch. Dist.*, 702 F. Supp. 2d 699, 704 (N.D. Miss. 2010).  In this case, Plaintiff similarly alleges that she uses her clothing and appearance to convey a message about her gender identity.  The Court therefore finds that at this stage, Plaintiff has pled sufficient facts to support her claim that this conduct is intended to convey a particular message—her feminine gender identity—and that that conduct is likely understood as conveying that message.

To state a First Amendment claim, a plaintiff must allege that the government action complained of burdens protected speech, whether through restricting speech, punishing speech, or chilling people from engaging in speech.  *See Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020) (First Amendment injury can include chilling speech); *Long Beach Area Peace Network v. City*

1   *of Long Beach*, 574 F.3d 1011, 1019 (9th Cir. 2009) (First Amendment injury can include

2   forcing plaintiff to modify speech).  As a matter of standing and to state a claim under the

3   First Amendment, the plaintiff's right to freedom of expression must have been in some

4   way abridged by the challenged regulation or act; if the challenged government action

5   has no effect on or relation to the protected expression, there can be no First Amendment

6   injury.  Plaintiff asserts that Defendant City's policy, TB 14-05, as adhered to by

7   Defendant Zajda, burdened her right to express her gender by conditioning placement at a

8   female jail on whether she had undergone gender reassignment surgery.  SAC ¶ 155.

9   However, Plaintiff has not alleged that her decision not to have this surgery is protected

10  First Amendment conduct.  Rather, the primary protected conduct Plaintiff asserts in the

11  SAC is her expression of a feminine gender identity through aspects of her outward

12  appearance, clothing, and mannerisms.  Under TB 14-05, incorporated into the SAC by

13  reference, Plaintiff would have been transported to SDCJ even had she not expressed her

14  feminine gender identity; indeed, TB 14-05 essentially states that a transgender

15  individual's gender expression has no bearing on facility placement, as it provides that

16  "no other changes or surgeries [other than 'lower anatomy' status] apply" to booking

17  determinations.  San Diego Police Dep't, Training Bulletin: Police Interaction with

18  Transgender Individuals (Oct. 28, 2014) ("TB 14-05") at 3.  Accordingly, Plaintiff has

19  not plausibly stated a claim that City Defendants' transportation of Plaintiff to SDCJ

20  pursuant to TB 14-05 violated the First Amendment by unconstitutionally burdening her

21  expression of gender identity.

22       In the SAC, Plaintiff also asserts that City Defendants unconstitutionally burdened

23  her First Amendment rights by transporting Plaintiff to SDCJ because of her statement to

24

25

26

27

28

Defendant Zajda regarding her genitalia.[4]  In this case, Defendant Zajda transported Plaintiff to SDCJ upon her statement that she had not undergone gender reassignment surgery, SAC ¶ 153, suggesting that this may raise a claim that Plaintiff's booking into a jail inconsistent with her gender identity was a result of her protected speech.  But TB 14-05 itself states that "the officer will transport the individual to the appropriate facility," by which the policy means the facility consistent with the individual's "lower anatomy," even if the individual did not convey that information.  TB 14-05 at 3.  It is not a person's speech or expression, but their "lower anatomy or surgical status" that "determines which jail facility the individual is booked into."  Because TB 14-05 makes facility placement contingent on a physiological factor, not speech, Plaintiff would have been placed at SDCJ regardless of what she told Defendant Zajda.  Plaintiff has thus not plausibly alleged that TB 14-05 or Defendant Zajda's application of the policy burdens her First Amendment rights with respect to her statement to Defendant Zajda.

Accordingly, the Court GRANTS Defendant City of San Diego and Defendant Zajda's motion to dismiss Count 1 of Plaintiff's First Amendment claim for unconstitutional burden on protected expression.  The Court will dismiss the claim with prejudice because, given the text of TB 14-05 and Plaintiff's assertion that Defendant Zajda's actions were motivated by his stated adherence to TB 14-05, which does not condition placement on any outward gender expression, "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *See DeSoto*, 957 F.2d at 658.[5]

\ \ \

---

[4] Plaintiff also contends TB 14-05 burdens her right to convey confidential information in the course of her arrest but provides no other factual support or argument as to this claim.  SAC ¶ 155.
[5] Because the Court finds that Plaintiff has failed to state a First Amendment burden on protected expression claim, the Court does not reach the issue of qualified immunity with respect to this claim. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

14

*ii.  Retaliation*

In order to make out a claim for retaliation a plaintiff must demonstrate that "(1) [s]he engaged in constitutionally protected activity; (2) as a result, [s]he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  To establish a causal relationship, a plaintiff must allege the First Amendment activity was "a substantial or motivating factor in the defendant's conduct," *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) (citing *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300–01 (9th Cir. 1999)), "meaning that the adverse action against [her] would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).  Plaintiff alleges that as retaliation for her gender expression, Defendant Zajda, pursuant to Defendant City's TB 14-05 policy, transported her to SDCJ and Defendant Chow accepted her for booking to SDCJ.  In moving to dismiss, City Defendants and Defendant Chow again dispute that Plaintiff's gender expression is a protected activity.  Defendants also argue that Plaintiff has failed to plead a causal relationship between her expression of her feminine gender identity and either Defendant Zajda's transportation of her to SDCJ, or Defendant Chow's medical clearance of Plaintiff, or an intent to interfere with her First Amendment rights.  Defendants Zajda and Chow also assert that they are entitled to qualified immunity.  In response, Plaintiff argues that she is not required to plead that the individual defendants had the intent to retaliate against her, and that her rights are clearly established.

15

As explained with respect to Plaintiff's burden on expression claim, Plaintiff has adequately alleged that her gender expression is protected First Amendment activity.[6] The Court therefore turns to whether Plaintiff has adequately alleged a "causal relationship" between the adverse actions and the constitutionally protected activity.  For the same reasons that the Court found Plaintiff failed to plausibly allege that her gender expression was burdened by TB 14-05 and Defendant Zajda's implementation of that policy, Plaintiff has not plausibly alleged a causal connection between her gender expression and her transportation to SDCJ.  Unlike a case in which any "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)), here, the adverse consequence—Plaintiff's transportation to SDCJ—was provoked by Defendant City's rules regarding "lower anatomy," not by her feminine gender expression.  According to TB 14-05, this adverse action would have been taken regardless of Plaintiff's gender expression and regardless of any retaliatory motive on the part of Defendant Zajda, such that retaliation was not the "but-for cause" of Plaintiff's injury.  *See id.*; TB 14-05 at 3. As to Defendant Chow, Plaintiff alleges that during the medical screening, Defendant Chow documented in her report that Plaintiff identifies as a male-to-female transgender individual, included in the biographical portion "Sex: M," and found her fit for jail at SDCJ.  SAC ¶ 112.  But Plaintiff has not plausibly alleged that Defendant Chow found Plaintiff "fit for jail" *because* of her gender expression; rather, the facts she alleges indicate that Defendant Chow approved her for placement in the men's jail *in spite of* her gender expression.  Had Plaintiff not expressed her feminine gender identity and instead expressed a masculine gender identity, based on the facts alleged it is not plausible that

---

[6] Accordingly, the Court need not resolve the parties' dispute regarding Federal Rule of Civil Procedure 12(g).

3:20-cv-00246-GPC-AGS

1   Plaintiff would have been found unfit for jail at SDCJ.  *See* SAC ¶¶ 55; *see also*

2   *Hartman*, 547 U.S. at 260 ("[A]ction colored by some degree of bad motive does not

3   amount to a constitutional tort if that action would have been taken anyway.").

4           Ultimately, the crux of Plaintiff's challenge to Defendants' policies and actions is

5   that Defendants *do not* adequately consider transgender individuals' outward gender

6   expression (or legal gender, or gender identity) when determining whether to place them

7   in a male or female facility.  Plaintiff alleges that Defendants only consider transgender

8   individuals' genitalia, and Plaintiff does not allege that this constitutes First Amendment

9   conduct.  The Court thus GRANTS Defendant City of San Diego, Defendant Zajda, and

10  Defendant Chow's motion to dismiss Count 2 of Plaintiff's First Amendment claim for

11  retaliation with prejudice, as amendment of this claim would be futile.[7]

12          **B.    Substantive Due Process Claim**

13          Defendants Zajda and Chow move to dismiss Plaintiff's claim that they deprived

14  her of substantive due process under the Fourteenth Amendment by subjecting her to

15  conditions that amount to punishment at SDCJ (Fifth Claim for Relief, "Count 1"

16  conditions of confinement claim).  Plaintiff opposes.

17          The substantive due process component of the Fourteenth Amendment prohibits

18  the state from subjecting a pretrial detainee in conditions that "amount to punishment of

19  the detainee."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "[T]o constitute punishment,

20  the harm or disability caused by the government's action must either significantly exceed,

21  or be independent of, the inherent discomforts of confinement." *Demery v. Arpaio,* 378

22  F.3d 1020, 1030 (9th Cir. 2004).  Further, "[a] finding of liability in a civil rights action .

23  . . requires, as a matter of law, that the defendant be the 'proximate cause of the section

24

25  _____

26  [7] Because the Court finds that Plaintiff has failed to state a First Amendment retaliation claim, the Court

27  does not reach the issue of qualified immunity with respect to this claim. *See* Pearson, 555 U.S. at 236.

17

28

1983 injury,'" *Hazle v. Crofoot*, 727 F.3d 983, 993 (9th Cir. 2013) (quoting *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996)), meaning a plaintiff must allege that the defendant "set[] in motion a series of acts by others which the actor kn[ew] or reasonably should [have] know[n] would cause others to inflict the constitutional injury," *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

In the SAC, Plaintiff alleges that the actions of Defendants Zadja and Chow, in transporting Plaintiff to SDCJ and finding her fit for jail, set in motion conditions of confinement that constitute punishment, including her placement in administrative segregation, in a cell without a functioning telephone and, later, in a cell with human feces and without toilet paper or a bed or mattress, as well as the refusal to provide her with replacement footwear and transition-related medication.  The Court has already found that Plaintiff plausibly pled facts to show that the conditions in which she was held at SDCJ amounted to punishment.  ECF No. 65 at 33–34.  The parties now dispute the issue of proximate cause.  Defendant Zajda argues Plaintiff has not alleged facts sufficient to show it was reasonably foreseeable that transporting Plaintiff to SDCJ would cause others to subject her to the alleged conditions of confinement.  Defendant Chow asserts that Plaintiff has failed to allege a sufficient causal nexus between Defendant Chow's medical clearance of Plaintiff and her conditions of confinement.  As to Plaintiff's assertion that Defendant Chow failed to provide her with transition-related medication required to maintain her gender identity, Defendant Chow contends that Plaintiff's claim fails because she was not legally permitted to provide or responsible for providing Plaintiff her medications, and because Plaintiff has not alleged she needed to take the medication within a certain time frame and never conveyed such to Defendant Chow.  Both defendants also maintain that they are entitled to qualified immunity on the conditions of confinement claim.

\ \ \

1

### i. Defendant Zajda

The Court must determine whether, taking all well-pleaded factual allegations in the complaint as true, *Iqbal*, 556 U.S. at 678–79, Plaintiff has plausibly alleged that Defendant Zajda knew or reasonably should have known that Plaintiff would suffer the substantive due process deprivations she alleges.  The Court previously dismissed this claim against Defendant Zajda because she had not pled facts that allowed the inference that her alleged conditions of confinement were reasonably foreseeable to Defendant Zajda.  ECF No. 65 at 31-32.  Plaintiff has now alleged that Defendant Zajda was familiar with arresting and transporting members of the LGBT community to San Diego jails given his assignment to work in Hillcrest during the relevant period; that Defendant Zajda had arrested females and is familiar with Las Colinas Detention Facility (the female detention facility); and that the conditions of SDCJ are the subject of public record and that Defendant Zajda therefore would have known about the overcrowding and other issues that resulted in the conditions in which she was housed.  SAC ¶ 241.  Taking these allegations as true, it is plausible that Defendant Zajda would have known that Plaintiff would have been placed in administrative segregation due to her status as a transgender woman being booked into a men's jail, which is one of the facts supporting Plaintiff's conditions of confinement claim.  SAC ¶ 239(a).  However, Plaintiff has provided no factual support for her contention that Defendant Zajda should have known Plaintiff would be forced to remove her shoes and would not be given replacements, or that Plaintiff would not be given transition-related medication.  Plaintiff has not alleged that Defendant Zajda is familiar with any policies or practices of SDCJ or the County with respect to detainees' footwear or the provision of medication.  A closer issue is whether Plaintiff has plausibly alleged that the unsanitary conditions of the housing units in which Plaintiff was placed were reasonably foreseeable to Defendant Zajda.  Plaintiff has alleged that the jail's overcrowding and other conditions are generally known and

3:20-cv-00246-GPC-AGS

that the San Diego County Grand Jury, which "makes regular inquiries into the condition and management of the County's jails," documented SDCJ's overcrowding and noted that the facility was "mostly enclosed and somewhat dreary," and had a "very strong" urine odor in areas around the safety cells. SAC ¶¶ 35, 36, 38, 241.  Although these factual allegations are not definite indications of Defendant Zajda's knowledge, the Court finds that these specific factual allegations have pushed Plaintiff's claim of foreseeability, at least as to her placement in administrative segregation and the unhygienic conditions she was held in, from possible to plausible.

Having found Plaintiff has pled facts showing a substantive due process violation, the Court now considers "whether the right is clearly established such that a reasonable government official would have known that 'his conduct was unlawful in the situation he confronted.'" *Dunn v. Castro*, 621 F.2d 1196, 1199 (9th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established rights.  *Anderson v. Creighton*, 483 U.S. 635, 638–40 (1987).  "[T]he clearly established law must be 'particularized' to the facts of the case."  *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (citing *Anderson*, 483 U.S. at 640).  To show the law was clearly established, "plaintiffs must generally identify a case where a defendant acting under similar circumstances was held to have violated the [constitutional provision underlying a claim]." *Felarca v. Birgeneau*, 891 F.3d 809, 822 (9th Cir. 2018).  However, "[w]here unlawfulness is apparent, qualified immunity does not exist." *Kelly v. City of Oakland*, 198 F.3d 779, 784 (9th Cir. 1999).

Plaintiff cites no case in which the officer's act of transporting someone to a facility where they are likely to face unsanitary or otherwise punitive conditions like

1

those alleged was found unconstitutional.[8]  Particularly given that Defendant Zajda, a

2

City official, was not acting on behalf of the County, it was not obvious that Defendant

3

Zajda could be held liable for conditions and decisions made at SDCJ.  Unlike the

4

hypothetical which Plaintiff invokes regarding "an officer transport[ing] an arrestee to a

5

jail that was burning down in a chemical fire and forc[ing] the inmate to remain in the jail

6

for processing," ECF No. 84 at 19, the situation at hand was not so stark that "all but the

7

plainly incompetent or those who knowingly violate the law" would have recognized that

8

transportation to SDCJ was unlawful.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

9

Defendant Zajda's decision to transport Plaintiff to SDCJ despite his alleged knowledge

10

of its conditions, "even if constitutionally deficient, reasonably misapprehend[ed] the law

11

governing the circumstances."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

12

The Court therefore finds that Defendant Zajda is entitled to qualified immunity on

13

Plaintiff's substantive due process claim and GRANTS the motion to dismiss Count 1 of

14

the Fifth Claim for Relief.

15

      *ii.  Defendant Chow*

16

The Court now turns to whether Plaintiff has adequately alleged that the conditions

17

of confinement Plaintiff suffered were reasonably foreseeable results of Defendant

18

Chow's actions, namely her clearance of Plaintiff as fit for jail.  In her opposition to

19

County Defendants' motion to dismiss, Plaintiff argues that Defendant Chow should have

20

been aware of the conditions in the jail by virtue of her employment there and because

21

the conditions of SDCJ are well-known.  ECF No. 85 at 16.  Although the Court

22

recognizes that the connection between the publicly documented conditions that Plaintiff

23

24

25

26

27

---

[8] Although Plaintiff cites to *Shaw v. District of Columbia*, a case that found officers were not entitled to qualified immunity on the basis that a reasonable officer would know that treating a female detainee as if she were male violated her constitutional rights, 944 F. Supp. 2d 43, 59, Plaintiff does not here allege a conditions of confinement violation on the basis that she was brought to the men's jail even though she is a woman.  SAC ¶ 239.

28

cites, such as urine in the "safety cells" and overcrowding, and the actual conditions she was subjected are somewhat tenuous, Plaintiff does not have to prove her case at the pleading stage.  It is not implausible that a nurse employed by a jail would be aware of the conditions in the jail or that clearing a transgender defendant for custody would result in her placement in administrative segregation.  Further, Plaintiff alleges that she informed Defendant Chow that she required certain medications but did not receive them from Defendant Chow or any other SDCJ staff.  SAC ¶ 113.  Although County Defendants assert that Defendant Chow, who is not a physician, could not have provided the medication, it is not implausible that Defendant Chow's clearance of Plaintiff as "fit for jail" while Plaintiff lacked necessary medication, rather than referring her to a physician or otherwise taking steps to ensure she received the medication, would foreseeably result in Plaintiff being held in jail without the medication.  Taking Plaintiff's factual allegations at true, Plaintiff has adequately pled that Defendant Chow's determination that Plaintiff was fit for jail was the proximate cause of her detention in allegedly unconstitutional conditions.

In considering whether Defendant Chow is entitled to qualified immunity on the conditions of confinement claim, the Court must determine whether there is clearly established law "'particularized' to the facts of the case." *White*, 137 S.Ct. at 552.  Here, Plaintiff alleges that a number of conditions she endured while at SDCJ violated her substantive due process rights, but they fall into three general categories: conditions of the cells and failure to provide for basic needs; placement in administrative segregation because she is transgender; and failure to provide medication.  SAC ¶ 239.  The Court is unable to locate any case law finding that medical clearance of an individual for custody into a jail, or any other threshold administrative booking procedure, is unconstitutional, even when the defendant is aware the jail has unsanitary or otherwise deficient cells or that the detainee will be placed in administrative segregation.  Plaintiff does not allege

that Defendant Chow had any involvement in her specific cell placement or the removal of her shoes.  Although a severe lack of sanitation may violate detainees' clearly established rights, *see Anderson v. Cty. of Kern,* 45 F.3d 1310, 1314–15 (9th Cir. 1995), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995), the question is whether Defendant Chow reasonably should have known *her* conduct was unlawful.  There is no indication Defendant Chow should have known that the act of marking her as "fit for jail" based on a health exam, which then allowed others at the jail to continue processing her and ultimately place her in the allegedly unconstitutional conditions, itself was unlawful.

However, Plaintiff has cited authority for her claim that there is a clearly established right to adequate medical care in custody.  *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordo*n, 139 S. Ct. 794 (2019); *cf. Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Goldman v. Fed. Bureau of Prisons*, 768 F. App'x 714 (9th Cir. 2019) (district court dismissal was premature where incarcerated plaintiff alleged that prison officials denied prescribed medication for his opioid addiction).  Because Plaintiff has asserted in the SAC that she requires certain medications to maintain her gender identity, that Defendant Chow—the only medical staff with whom Plaintiff interacted—did not ensure she received the medication, and that she suffered harm without it, it would be premature to wade into factual disputes regarding the risk of harm Plaintiff faced or the reasonableness of Defendant Chow's conduct.  *See Gordon*, 888 F.3d at 1125; *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004) (recognizing that a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record").

Accordingly, at the pleading stage, the Court does not find Defendant Chow is entitled to qualified immunity for Plaintiff's conditions of confinement claim based on the failure to provide medication and DENIES the motion to dismiss the Fifth Claim for

Relief with respect to that claim in Count 1.  As to the rest of Plaintiff's conditions of confinement allegations, the Court finds Defendant Chow is entitled to qualified immunity and GRANTS the motion to dismiss the Fifth Claim for Relief with respect to Plaintiff's claims regarding her placement in administrative segregation, the conditions of the cells, and the failure to provide footwear.

### C.    Motion to Strike County Does 35 through 45

Plaintiff includes as defendants in the SAC Does 35 through 45, natural persons who, as of December 30, 2018, were employed by the County at SDCJ and whose identities are unknown to Plaintiff.  SAC ¶ 20.  In the SAC, they are referred to collectively with Does 31 through 34 as "County Does."  *Id.*  Plaintiff asserts claims for First Amendment retaliation, Fourteenth Amendment conditions of confinement violations, and violations of the Bane Act against all County Does, SAC at 25, 36, 41, as well as other claims against specifically numbered County Does 31 through 34.  County Defendants argue that Does 35 through 45 should be stricken pursuant to Rule 12(f) or alternatively dismissed pursuant to Rule 12(b)(6) because Plaintiff has failed to describe specific actions taken by these individuals.  Plaintiff opposes, arguing that the inclusion of Does 35 through 45 is harmless and "preserves an easy, efficient method of adding" individuals to the litigation.

The Ninth Circuit permits the use of "Doe" defendants when the identity of the alleged defendant is not known prior to the filing of the complaint.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).  Here, the Court does not find the inclusion of Does 35 through 45 to be impertinent, redundant, or scandalous, or to have "no possible bearing on the subject matter of the litigation."  Fed. R. Civ. P. 12(f); *Netflix*, 2006 WL 2458717 at *8 (citations omitted).  The allegations regarding County Does' activities are generally relevant to Plaintiff's existing claims against Defendant County, and therefore "pertain . . . to the issues in question."  *See Whittlestone, Inc. v.*

1   *Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (citation omitted).  Plaintiff does

2   include some allegations against "County Does" that do not necessarily relate to Does 31

3   through 34, rendering these allegations nonredundant.  *E.g.*, SAC ¶¶ 114, 134.  County

4   Defendants have not specified how they would be prejudiced by the inclusion of Does 35

5   to 45 beyond the fact that Plaintiff has made only generalized and conclusory allegations

6   against these unnamed employees, which is a matter better resolved under Rule 12(b)(6).

7        Accordingly, the Court will consider whether Plaintiff has failed to state a claim

8   against any of these defendants.  Even though the defendants are unidentified, Plaintiff

9   cannot move proceed against Does 35 through 45 if it is clear that the claims against them

10  would be otherwise dismissed.  *See Wakefield*, 177 F.3d at 1163.  For the First

11  Amendment retaliation claim, Plaintiff does not attribute any conduct to County Does

12  other than Does 31 through 34.  SAC ¶ 163.  For the Bane Act claim, Plaintiff does not

13  allege any conduct with respect to any County Does.  *Id.* ¶¶ 262–66.  Plaintiff has thus

14  failed to state a claim against Does 35 through 45 under the First Amendment or the Bane

15  Act.  For the conditions of confinement claim, Plaintiff alleges that an unspecified

16  number or combination of County Does unconstitutionally subjected her to the conditions

17  she challenges.  *Id.* ¶¶ 239, 243.  The most detailed allegations regarding County Does

18  that are not specifically attributed to Does 31 through 34 are that some County Does

19  instructed Plaintiff to take off her shoes and some County Does did not intervene when

20  they witnessed the conditions under which she was being detained and instead laughed at

21  her.  *Id.* ¶¶ 114, 134.  These vague statements, without facts indicating approximately

22  how many of the fifteen County Does were involved, do not state a plausible claim for

23  relief against eleven unnamed SDCJ employees.  Even were Plaintiff to identify any of

24  County Does 35 through 45, the SAC would fail to state a claim against those individuals

25  because no particular conduct has been attributed to them as opposed to the group of

26  "County Does" as a whole.  Likewise, if Plaintiff were to ascertain the identity of

27

28

multiple individuals who took the actions attributed to Doe 31, she would not be able to simply substitute the true names of those individuals for any of Does 35 through 45; she would have to amend the complaint to allege what each individual employee did.

Accordingly, the Court DENIES County Defendants' motion to strike and GRANTS County Defendants' motion to dismiss Does 35 through 45 from the SAC. Because Plaintiff could potentially cure the pleading by putting forth more information as to the particular actions of these Does, the Court GRANTS Plaintiff leave to amend.

## IV.  CONCLUSION

For the reasons set forth above, the Court hereby:

1.   **GRANTS** Defendant City of San Diego's motion to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 1" (burden on protected expression claim) and "Count 2" (retaliation claim); and the Third Claim for Relief alleging Fourteenth Amendment Equal Protection violations as to "Count 2" (transportation claim) without leave to amend;

2.   **GRANTS** Defendant Matthew Zajda's motion to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 1" (burden on protected expression claim) and "Count 2" (retaliation claim); the Third Claim for Relief alleging Fourteenth Amendment Equal Protection as to "Count 2" (transportation claim); and the Fifth Claim for Relief alleging Fourteenth Amendment substantive due process violations as to "Count 1" (conditions of confinement claim) without leave to amend;

3.   **GRANTS** Defendant County of San Diego's motion to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 2" (retaliation claim);

4.   **GRANTS** Defendant Emily Chow's motion to dismiss the First Claim for Relief alleging First Amendment violations as to "Count 2" (retaliation

3:20-cv-00246-GPC-AGS

claim); and the Fifth Claim for Relief alleging Fourteenth Amendment substantive due process violations as to "Count 1" (conditions of confinement claim), except with respect to the provision of medication allegation, without leave to amend; and **DENIES** Defendant Chow's motion to dismiss the Fifth Claim for Relief as to "Count 1" (conditions of confinement claim) with respect to the provision of medication allegation;

5.   **DENIES** County Defendants' motion to strike Does 35 through 45 from the SAC and **GRANTS** County Defendants' motion to dismiss Does 35 through 45, with leave to amend.

**IT IS SO ORDERED.**

Dated: December 8, 2020

Hon. Gonzalo P. Curiel
United States District Judge

27