Ryan A. Graham, Esq., Cal. Bar No. 310186
**LAW OFFICES OF RYAN A. GRAHAM, ESQ.**
1049 Havenhurst Dr., No. 510
West Hollywood, CA 90046-6002
Tel.: (323) 792-6377 | Fax: (323) 345-5035
Email: ryan@ryan.law
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ashley R. Vuz,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DCSS III, Inc., (d/b/a Gossip Grill), *et al.*,<br><br>　　　　Defendants. | Case No.: 3:20-CV-00246-GPC-AGS<br>Hon. Gonzalo P. Curiel<br><br>**Declaration of Ryan A. Graham, Esq. in Support of Motion for Settlement Approval**<br>**[UNDER SEAL]**<br><br>Date ............ Sep 17, 2021<br>Time ........... 1:30 pm<br>Location ..... Edward J. Schwartz United States Courthouse, 221 West Broadway, Courtroom 2D, San Diego, CA 92101 |

## DECLARATION OF RYAN A. GRAHAM, ESQ.

I, Ryan A. Graham, Esq., declare the following:

1. I am an attorney licensed to practice law in the State of California and am admitted to practice in the Southern District of California. I am employed as a solo practitioner at the Law Offices of Ryan A. Graham, Esq., attorneys of record for Plaintiff Ashley R. Vuz ("Plaintiff" or "Vuz") in *Ashley Vuz v. DCSS III, Inc. (d/b/a Gossip Grill), et al.* I have personal knowledge of the facts set forth in this declaration, except where stated upon information and belief. If called upon to testify about the contents of this declaration, I would and could competently do so.

2. Several exhibits are attached to this declaration:

　　a. Attached as EXHIBIT A is a genuine copy of the settlement agreement

        between Plaintiff and Defendants DCSS III, Inc., Dwayne Wynne, Jermaine Castaneda, Arnell Casteel, and Maria Martinez Rocha ("Settling Defendants");

    b. Attached as EXHIBIT B is a genuine copy of an email I sent to Thomas Bradford, Esq., an equity partner at Peterson Bradford Burkwitz, LLP (PBB) on November 17, 2020;

    c. Attached as EXHIBIT C is a is a genuine copy of an email exchange between me and Mr. Bradford between December 11, 2020 and December 14, 2020;

    d. Attached as EXHIBIT D is a genuine copy of an email sent by Warren Gilbert, Esq. to the parties in this action on February 9, 2021;

    e. Attached as EXHIBIT E is a genuine copy of an email sent by Warran Gilbert, Esq. to me on December 4, 2020;

    f. Attached as EXHIBIT F is a genuine copy of an email sent from Jacqueline McQuarrie, Esq. on March 9, 2021;

    g. Attached as EXHIBIT G is a genuine copy of an email exchange between myself, Warren Gilbert, Esq., and Alexa Katz, Esq. between April 16, 2021 and April 21, 2021.

3. Plaintiff, through her counsel (*i.e.*, me), and Settling Defendants, through their counsel (Warren Gilbert, Esq. and Robert Bergsten, Esq.), began discussing settlement in 2020. During the settlement discussions, Messrs. Gilbert and Bergsten provided documentation from Defendant DCSS III, Inc.'s insurance policy, noting that the policy limit for claims related to assault and battery is [REDACTED]

4. These discussions culminated in an informal agreement, communicated to Mr. Bergsten on November 10, 2020, to the settlement proposed by Settling Defendants for [REDACTED].

5. Given that PBB had filed a *Notice of Lien by Peterson Bradford Burkwitz* (ECF No. 78), I notified PBB of the pending settlement via email on November 17, 2020.

*See* Ex. B. In my communications with PBB regarding *Vuz*, I have dealt exclusively with Thomas Bradford, Esq., an equity partner at PBB. While the November 17, 2020 email does not disclose the amount of the settlement, it was disclosed to Mr. Bradford via telephone afterward, as confirmed in the email dated December 14, 2020 contained within Exhibit C. *See* Ex. C, at 1.

6. While PBB's original *Notice of Lien* does not disclose the amount of the lien, it was later confirmed by Mr. Bradford as [REDACTED]. This situation has created a dispute between Plaintiff and PBB regarding the distribution of the settlement proceeds.

7. After November 10, 2020, Plaintiff and Settling Defendants began conferring on the terms of the formal settlement agreement. During that process, the parties were cognizant of PBB's lien, and agreed to a process for resolving the related dispute. Specifically, the settlement agreement provides the following

> [The Law Offices of Ryan A. Graham, Esq.] agrees to file an ex parte application requesting the Court issue an order to show cause (OSC) regarding the distribution of the settlement proceeds, setting a hearing on the dispute 28 days after the OSC issues with the following briefing schedule: (1) that each party may file an Initial Response to OSC in accordance with the rules for motions set forth in Local Rule 7.1 (h), 14 days prior to hearing; and (2) that each party may file a Supplemental Response to OSC in accordance with the rules for replies set forth in Local Rule 7.1 (h), 7 days before the hearing. RAG agrees to hold the entire settlement sum in its client trust account until a distribution schedule is determined by a court of competent jurisdiction, unless otherwise agreed between PBB and RAG.

8. On December 4, 2020, Mr. Gilbert informed me that he had "informed both the City and County's attorneys of the settlement amount and they've agreed to keep it confidential." Ex. E.

9. By January 13, 2021, Plaintiff and Settling Defendants came to an agreement regarding the terms of a release/settlement agreement.

10. In the agreement, Plaintiff agreed to settle/release her claims against Settling Defendants in exchange for [REDACTED] The terms of the settlement agreement provide that the settlement amount be kept confidential.

11. On January 14, 2021, the representative from Settling Defendants' insurance carrier signed the settlement agreement. Plaintiff and I both signed the agreement on

3
**Declaration of Ryan A. Graham, Esq. in Support of Motion for Settlement Approval**

January 28, 2021. *See* Ex. A.

12. On February 9, 2021, Mr. Gilbert distributed a draft copy of a *Joint Motion for Good Faith Settlement Determination* to the parties. Ex. D.

13. Over the following months, the parties conferred on the language of a joint stipulation to be filed seeking a good faith determination of the settlement. During this process, Plaintiff and Settling Defendants encountered several obstacles from the non-settling parties, seeking, at times, to insert language that was not agreeable to Plaintiff and that went well beyond the scope of what is necessary to determine good faith or approve a settlement. For example, Defendant City of San Diego sought to add the following language: "The parties agree that this settlement does not affect the non-settling Defendants' ability to request a setoff against the total recoverable damages or to request that the jury make an apportionment determination (including an allocation as to DCSS, Inc. and the individual DCSS defendants) for purposes of awarding damages at trial." Ex. F.

14. Moreover, Defendant County took the position—in April 2021—that "the agreement needs to include language stating that City and County Defendants reserve their right to include Gossip Grill on a jury form and that City and County Defendants are not waiving their right to request that Gossip Grill defendants be included on the form by signing the agreement." Ex. G. Defendant County also stated that "[w]e likely need to wait to see who from the City is replacing Jackie before finalizing the agreement." Ex. G.

15. Plaintiff takes the position that a reservation of rights regarding verdict forms is unnecessary, given that the settlement agreement posed no threat of waiving such rights in the first place.

16. In response to the April 21, 2021 email, I noted to the parties that the fastest way of completing the settlement approval process would be to file a noticed motion. Ex. G.

17. Nevertheless, Plaintiff continued to be amenable to working with the non-settling defendants regarding a joint stipulation. However, I learned on June 3, 2021,

4

**Declaration of Ryan A. Graham, Esq. in Support of Motion for Settlement Approval**

from Mr. Gilbert, that Defendant County would agree to the proposed joint stipulation language only if Mr. Gilbert would agree to make his clients available for sworn statements. Mr. Gilbert informed me that Defendant County's attorney was concerned that she had almost exhausted her depositions (limit of 10).

18. Critically, the settlement agreement conditions payment to Plaintiff on the later of the two following events: (1) 30 days from the date the settlement agreement was signed or (2) 30 days from the date of a "good faith settlement determination by the Court." Ex. A.

19. Given the developments learned from Mr. Gilbert, the inability of the parties to agree on the language of a joint stipulation/joint motion, and the necessity of obtaining judicial authorization of the settlement in order to secure payment of the settlement funds, Plaintiff will resort to filing a noticed motion seeking settlement approval and dismissal of the Settling Defendants.

20. There is no information presently known to me suggesting that either of Defendant City or Defendant County challenge the settlement agreement on the basis that it lacks good faith.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing statements are true and correct.

Executed June 4, 2021 in West Hollywood, California.

*/s/ Ryan A. Graham*
Ryan A. Graham, Declarant