ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
ALEXA KATZ, Senior Deputy (SBN 317968)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-5279; Fax: (619) 531-6005
E-mail: robert.ortiz@sdcounty.ca.gov

Attorneys for Defendants County of San Diego and Emily Chow

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY R. VUZ, | No. 20cv0246-GPC-AGS |
| Plaintiff, | **STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| DCSS III, Inc., a California corporation doing business as GOSSIP GRILL; DWAYNE WYNNE, an individual; COUNTY OF SAN DIEGO, a political subdivision on the State of California, EMILY CHOW, an individual; CITY OF SAN DIEGO, a municipal corporation; MATTHEW ZADJA, an individual; and DOES NOS. 1 THROUGH 45, individuals, | Date: January 21, 2022<br>Time: 1:30 p.m.<br>Courtroom: 2D<br>Judge: Hon. Gonzalo P. Curiel |
| Defendants. | |

Defendants County of San Diego and Emily Chow submit this separate statement of undisputed material facts, together with references to supporting evidence, in support of their motion for summary judgment[1]

///

///

///

---

[1] All exhibits referenced are attached to the notice of lodgment filed herewith.

## A. ALL OF PLAINTIFF'S CLAIMS ARE BARRED AS A MATTER OF LAW BECAUSE THE UNDISPUTED FACTS ESTABLISH THAT THEIR WAS NO UNDERLYING CONSTITUTIONAL VIOLATIONS.

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| 1. Plaintiff is a transgender women who began transitioning from Male to Female in 2015.  She has not had gender confirming surgery on her genitalia.<br>**Evidence:**<br>Deposition of Ashley Vuz, Ex. A- pp. 22:16-20, 25:2-9, 234:8-11 | |
| 2. On December 29, 2018, Plaintiff was in San Diego visiting her mother and friends.  After going to dinner and getting a drink, the group visited an LGBTQ-friendly bar in Hillcrest called Gossip Grill. The group paid a cover charge to enter Gossip Grill.<br>**Evidence:**<br>Ex. A-pp. 135:10-22, 137:17-24, 138:16-25, 140:9-16, 142: 13-25, 143: 1-4<br>Ex. B-Surveillance Video of Plaintiff Entering Gossip Grill. | |
| 3. At Gossip Grill, Plaintiff argued with a security guard.  The security guard asked Plaintiff to leave the bar.  Plaintiff believed the LGBTQ-friendly bar was discriminating against her because of her gender identity.<br>**Evidence:**<br>Ex. A-pp. 145:1-25, 146:1-25, 147:1-5, 149: 3-7, 25, 150:1-6, 13-25, 151:1-7,18-25, 152:1-5 | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| Ex. C- Deposition of Dwayne Wynn, pp. 20:13-24, 23:1-24, 24:2-19, 30:11-17 | |
| 4. Plaintiff demanded a refund of her cover charge. During this exchange, Plaintiff reached inside the cash box and grabbed money. **Evidence:** Ex. A-pp. 155:3-15, 157:18-25, 158:1-12 Ex. C-pp. 23:1-24, 24:2-19, 27:11-25 Ex. D-Surveillance video of Plaintiff taking money from the till | |
| 5. Gossip Grill security demanded Plaintiff return the money. Plaintiff refused. Plaintiff punched a security guard in the face. Security restrained her. A Gossip Grill security guard called 911. **Evidence:** Ex. A-pp. 58:18-22, 159: 23-25,160: 1-13 Ex. C-pp. 23:1-25, 28:1-8, 18-25, 29: 1-19, 30:25, 31:1, 33:23-25, 34:1-4 Ex. E -Surveillance videos of Plaintiff's altercation with the security guards | |
| 6. Security guards followed Plaintiff down the street and Plaintiff ran to a bar across the street to hide. **Evidence:** Ex. A- pp. 164: 24-25, 165:1-3 Ex F- Cell phone video of Plaintiff running down the street | |
| 7. The San Diego Police Department ("SDPD") responded to the call. The officers detained Plaintiff and conducted an investigation. **Evidence:** Ex. G-Arrest reports | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| 8.  The SDPD determined there was probable cause to arrest Plaintiff for violating Penal Code section 212.5 (Felony Second Degree Robbery).<br>**Evidence:**<br>Ex. H -Probable Cause Declaration and Judge Response Report | |
| 9. Plaintiff was transported to SDPD headquarters by Officer Matthew Zadja.<br>**Evidence:**<br>Deposition of Matthew Zadja, Ex I, pp. 35:25, 36:1-16, 44:22-25, 45:1-17, 47: 12-25 | |
| 10.   Officer Zadja learned that Plaintiff had not had gender confirming surgery.  As directed by SDPD Training Bulletin 14-05, Officer Zadja transported Plaintiff to San Diego Central Jail ("SDCJ").<br>**Evidence:**<br>Ex. A-pp. 175: 10-24, 224:4-11<br>Ex. I-pp. 20:6-24, 21:1-4, 18-19, 22:15-17, 37:1-8, 93:18-25, 94:1-4 | |
| 11.   Plaintiff arrived at San Diego Central Jail ("SDCJ") at approximately 3:10 a.m. Plaintiff went through the initial booking procedures outlined in Detention Services Bureau ("DSB") Policies Q.1 and Q.7, including meeting with a jail nurse.<br>**Evidence:**<br>Ex. J- San Diego Central Jail CCTV Video Stills p. 1<br>Ex. L-DSB polices Q.1 and Q.7<br>Ex. K-Deposition of Nurse Emily Chow pp. 22:14-25, 23:1, 31:2-9 | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| 12. Plaintiff was medically screened by jail intake Nurse Emily Chow. The role of the intake nurse is to make sure arrestees are medically stable, or "fit for jail." Pursuant to DSB Policy M.9, the nurse assesses the arrestee's physical and psychological health.<br>**Evidence:**<br>Ex. A- pp. 80: 10-25,81:3-12<br>Ex. K- pp. 16:4-17, 38:3-14<br>Declaration of Nurse Chow ("Chow Dec.") ¶ 4<br>Ex. M-DSB Policy M.9 | |
| 13. If an arrestee is having a medical or psychological emergency, the arresting officer is instructed to take them to a hospital. If the intake nurse determines that the arrestee needs a medical evaluation because of a health issue they are directed to a secondary screening process.<br>**Evidence:**<br>Ex. K-pp. 40:16-2, 41:1-15, 19-25, 57:19-23.<br>Declaration of Jon Montgomery ("Montgomery Dec.") ¶¶ 5, 6, 7 | |
| 14. During medical intake all arrestees are asked if they identify as transgender.  If the arrestee says they identify as transgender, the intake nurse asks whether they are in the process of gender reassignment therapy and contacts a classification deputy<br>**Evidence:**<br>Chow Dec. ¶¶ 5, 6 | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| Ex. K- pp. 29:13-25, 39:7-25, 29:14-25, 30:1-6, 48:3-17, 57: 24-25, 58:1-9, 61:18-22, 62:9-20<br>Ex. N-Ashley Vuz Medical Intake questionnaire at p. 16 | |
| 15. A classification deputy conducts an interview with the arrestee to determine housing and placement in the jail.<br>**Evidence:**<br>Declaration of Eric Froistad ("Froistad Dec.") ¶ 7 | |
| 16. This process is identical for all County intake facilities, including: San Diego Central Jail and Los Colinas Detention and Reentry Facility.<br>**Evidence:**<br>Froistad Dec. ¶ 7<br>Chow Dec. ¶¶ 5, 6 | |
| 17. The intake nurse asks every arrestee if they are taking any prescription medications and has the arrestee execute information releases so the Medical Services Division can confirm that individual's medical and pharmaceutical records.<br>**Evidence:**<br>Chow Dec.¶¶ 7, 8, 9<br>Montgomery Dec.¶¶ 7,8,9<br>Exb. K-pp. 48: 20-25, 49:1-4, 66:6-16 | |
| 18.  The intake nurse is prohibited from administering any medication, regardless if the medication is prescription or over-the-counter.  A nurse is not allowed to prescribe or dispense medications unless acting under the order of a physician.<br>**Evidence:** | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| Chow Dec. ¶¶ 7, 9<br>Montgomery Dec.  ¶ 9<br>Exb. K-pp. 59: 23-35, 60:1-8 | |
| 19. During the medical intake Plaintiff confirmed that she identifies as transgender, was in the process of gender reassignment therapy, and was taking "several" medications. Plaintiff did not have these medications with her when she was booked into custody. Plaintiff signed releases allowing medical staff to obtain her pharmacy records..<br>**Evidence:**<br>Ex. A- pp. 81:3-12, 219:14-16<br>Chow Dec. ¶¶ 6, 8<br>Ex. N-Ashley Vuz Medical Intake questionnaire at p. 13<br>Ex. O-Releases signed during the medical intake screening<br>Ex. K-pp. 45:16-25, 48:20-25, 49:1-4 | |
| 20.Plaintiff was medically stable enough to enter the San Diego Central Jail<br>**Evidence:**<br>Ex. N-Ashley Vuz Medical Intake questionnaire at p. 19.<br>Chow Dec. ¶ 10 | |
| 21.  To obtain prescription medications for an inmate their pharmacy records need to be obtained and verified by a physician. Most medications need to be ordered from an outside pharmacy.<br>**Evidence:**<br>Exb. K–pp. 59:5-25; 60:1-8<br>Montgomery Dec. ¶¶ 10, 11, 12, 13, 14 | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| 22. The process of obtaining medication for inmates takes longer than 10 hours<br>**Evidence:**<br>Montgomery Dec. ¶¶ 10,11,12,13. 14 | |
| 23. Deputy Michael Frushon conducted a classification interview with Plaintiff.<br>**Evidence:**<br>Declaration of Corporal Michael Frushon ("Frushon Dec.") ¶¶ 4, 5 | |
| 24. The purpose of the classification interview is to provide inmates housing assignments so they are not at risk of harm and they do not place others at risk of harm.  All arrestees are asked the same questions to assess housing.<br>**Evidence:**<br>Declaration of Corporal Michael Frushon ("Frushon Dec.") ¶¶ 4, 5<br>Froistad Dec. ¶ 4 | |
| 25. If an individual identifies as transgender, the individual completes a J-350 form indicating whether they prefer to be housed with men, women, or do not have a preference. Gender identity is not determinative of housing preference. Housing preferences can be amended at any time by the inmate or the classification deputy.<br>**Evidence:**<br>Frushon Dec. ¶¶ 7, 8<br>Froistad Dec. ¶¶ 7, 8, 9, 10<br>Ex. Q.- J-350 forms signed by other detainees | |

7

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| 26. If the inmate expresses fear for their safety and may be at risk of harm if housed with other inmates, the classification deputy may also fill out a J-72 form.<br>**Evidence:**<br>Frushon Dec. ¶ 8<br>Froistad Dec. ¶ 9 | |
| 27. Plaintiff expressed fear of being beaten and harassed by inmates.  Plaintiff completed the J-350 form where she indicated that she wanted to be housed with women.<br>**Evidence:**<br>Ex. A- pp. 94: 3-16; 100:1-20<br>Frushon Dec. ¶¶ 5, 6 ,7 ,8 , 9, 10<br>Ex. P-J-350 Form Signed by Ashley Vuz<br>Ex. R-Incident Report Written by Corporal Frushon | |
| 28. Deputy Frushon observed that Plaintiff identified as female and exhibited female characteristics. Deputy Frushon noted that Plaintiff should be placed in protective custody and that she should be housed in a female facility. Plaintiff told Deputy Frushon that she planned to post bail.<br>**Evidence:**<br>Ex. A –pp. 99:1-16; 24-25<br>Frushon Dec. ¶¶ 7,8,10<br>Ex. P- J-350 Form Signed by Ashley Vuz<br>Ex. R-Incident Report Written by Corporal Frushon | |
| 29. Plaintiff was never housed in administrative segregation. It was never recommended that | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| Plaintiff should be housed in administrative segregation.<br>**Evidence:**<br>Ex. A-pp. 98:25; 99:1-16<br>Froistad Dec.¶ 12<br>Frushon Dec.¶ 9<br>Ex. R, Incident Report Written by Corporal Frushon<br>Ex S. J-72 Segregated Housing Order | |
| 30. Plaintiff was placed in private holding cells on the first and second floor for the duration of her time at SDCJ.  She was never housed in the jail's housing modules, which are located on floors three through eight.<br>**Evidence:**<br>Ex. A - pp. 11 8:3-7<br>Froistad Dec. ¶ 12<br>Ex. J- San Diego Central Jail CCTV Video Stills<br>Ex. T- Transcript of phone call with Patricia Vuz at pp. 1, 5 | |
| 31.  Plaintiff was first placed in a private holding cell on the first floor at 4:15 a.m. The phone would not work in that cell. She told a deputy she needed to post bail. She was moved to the cell next door where the phone was functional. In that cell, Plaintiff called her mom and arranged bail. Plaintiff cannot identify the deputies that moved her between cells.<br>**Evidence:**<br>Ex. A- pp. 100:24-25,101:1-22, 102:3-16, 104:1-24, 105:1-10107:20-25, 108:1-24, 225:8-13. | |

9

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| Ex. J- San Diego Central Jail CCTV Video Stills pp. 3, 4 | |
| 32. During the conversation with her mother, Plaintiff stated that a female jail deputy and the police officer who were arrested her were both "nice." **Evidence:** Ex. T-Transcript of phone call with Patricia Vuz at p. 3 | |
| 33. Plaintiff did not describe the cell as being covered with feces. She never told a deputy that the cell was unclean. Plaintiff was in that cell for five hours. **Evidence:** Ex. T- Transcript of phone call with Patricia Vuz at pp. 6, 7 Ex. A-pp. 108:1, 109:1-21 Ex. J- San Diego Central Jail CCTV Video Stills pp. 4, 5 | |
| 34. A female deputy removed Plaintiff's shoes. These shoes were damaged during the altercation at Gossip Grill. No other deputy prevented Plaintiff from putting her shoes back on. Plaintiff was provided replacement shoes. **Evidence:** Ex. A pp. 84:10-25, 85: 1-9, 14-23, 112:24-35, 113:1-25. 114:1-5 Ex. J- San Diego Central Jail CCTV Video Stills pp. 2, 9 | |

10

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| 35. Plaintiff posted bail and left SDCJ at approximately 1:20 p.m., the same day she was booked into the San Diego Central Jail.<br>**Evidence:**<br>Ex. J- San Diego Central Jail CCTV Video Stills p. 12 | |
| 36. Plaintiff was at SDCJ for less than ten hours, which is within the 6 to 12 hour window it can take for detainees to post bail and be processed in and out of the facility.<br>**Evidence:**<br>Ex. J- San Diego Central Jail CCTV Video Stills pp. 1-12<br>Froistad Dec. at ¶ 14 | 4 |
| 37. Plaintiff was not provided her medications prior to leaving the SDCJ because the medications could not be verified during the ten hours she was at the SDCJ.<br>**Evidence:**<br>Montgomery Dec. ¶ 14 | |
| 38. Plaintiff takes her transition-related medications in the morning. She was only delayed in taking her medications by a few hours.<br>**Evidence:**<br>Ex. A- p. 70:6-14 | |
| 39. Over the next week and a half Plaintiff received a Hepatitis A shot and contracted the flu.<br>**Evidence:**<br>Ex. A- p. 181:10-25<br>Montgomery Dec. ¶¶ 16,17 | |

## B.   PLAINTIFF'S MUNICIPAL CIVIL RIGHTS CLAIMS ARE BARRED AS A MATTER OF LAW BECAUSE (1) THERE IS NO UNDERLYING CONSTITUTIONAL VIOLATION, (2) THERE IS NO POLICY THAT DIRECTED A CONSTITUTIONAL VIOLATION, AND (3) THERE IS NO PATTERN OF SIMILAR CONSTITUTIONAL VIOLATIONS

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| 40. A classification interview is conducted with all arrestees who may be housed in County custody pursuant to R.1<br><br>**Evidence:**<br>Ex. U- DSB Policy R.1<br>Froistad Dec. ¶ 4 | |
| 41. Policy R.13 states that transgender identifying inmates are to be provided the same housing and programming opportunities as cisgender inmates regardless of the facility where they are housed.<br>**Evidence:**<br>Ex. U.-DSB Policy R.13<br>Froistad Dec. ¶ 11 | |
| 42. R.13 emphasizes the importance of case-by-case individualized evaluations of the preferences of gender non-conforming inmates and instructs deputies to primarily consider that individual's housing preferences in determining whether they should be housed in a primarily male or primarily female facility.<br>**Evidence:**<br>Ex. U-DSB Policy R.13 | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| Froistad Dec. ¶ 8 | |
| 43. The policy also provides instructions on the use of the J-350 form to document each individual's housing preferences (male, female, or no preference). These preferences can be amended.<br>**Evidence:**<br>Ex. U-DSB Policy R.13<br>Froistad Dec. ¶¶ 9, 10 | |
| 44. The language in Policy R.13 is based on the language in the Federal Prison Rape Elimination Act ("PREA").<br>**Evidence:**<br>Ex. U-DSB Policy R.13<br>Froistad Dec. ¶ 5 | |
| 45. The Board of State and Community Corrections has also noted no deficiencies in the Sheriff's Department's classification policies.<br>**Evidence:**<br>Froistad Dec. ¶ 13<br>Ex. W- BSCC Biennial Reports 2016-2017, 2018-2019 | |
| 46. Inspections of SDCJ between 2016 and 2018 pursuant to Title 15 note that the facility maintains clean and hygienic facilities and the facility is "clean and well maintained.<br>**Evidence:** | |

| Defendants' Undisputed Material Fact And Supporting Evidence | Plaintiff's Response And Supporting Evidence |
|---|---|
| Ex. V- Title 15 Inspection Reports from 2016-2017, 2017- 2018, and 2018-2019 Ex. W- BSCC Biennial Reports 2016-2017, 2018-2019 | |
| 47. Title 15 inspections noted no deficiencies in County policies concerning medical intake screening, management of communicable diseases, and pharmaceutical management.<br><br>**Evidence:**<br>Exhibit V- Title 15 Inspection Reports from 2016-2017, 2017- 2018, and 2018-2019 Ex. W- BSCC Biennial Reports 2016-2017, 2018-2019 | |

DATED:  September 23, 2021          Office of County Counsel


By: s/ALEXA KATZ, Senior Deputy
Attorneys for Defendants County of San Diego
and Emily Chow