```
 1  ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
    ALEXA KATZ, Senior Deputy (SBN 317968)
 2  Office of County Counsel, County of San Diego
    1600 Pacific Highway, Room 355
 3  San Diego, California 92101-2469
    Telephone: (619) 531-5279; Fax: (619) 531-6005
 4  E-mail: robert.ortiz@sdcounty.ca.gov

 5  Attorneys for Defendants County of San Diego and Emily Chow
```

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY R. VUZ, | No. 20cv0246-GPC-AGS |
| Plaintiff, | **DECLARATION OF CORPORAL MICHAEL FRUSHON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| DCSS III, Inc., a California corporation doing business as GOSSIP GRILL; DWAYNE WYNNE, an individual; COUNTY OF SAN DIEGO, a political subdivision on the State of California, EMILY CHOW, an individual; CITY OF SAN DIEGO, a municipal corporation; MATTHEW ZADJA, an individual; and DOES NOS. 1 THROUGH 45, individuals, | |
| Defendants. | |

I, Corporal Michael Frushon, declare as follows:

1.   I have personal knowledge of the matters set forth herein, and could competently testify thereto if called upon.

2.   I am employed by the San Diego Sheriff's Department as a Corporal currently assigned to the Jail Population Management Unit ("JPMU") at the San Diego Central Jail. I have worked with the San Diego Sheriff's Department for 21 years. Prior to my assignment as a Corporal, I worked at George Bailey Detention Facility, East Mesa

Detention Facility, and San Diego Central Jail as a line deputy. I joined the JPMU at the San Diego Central Jail in 2012 and have worked there for 9 years.

3. I am familiar with the allegations against the County of San Diego as set forth in Plaintiff Ashley R. Vuz's Second Amended Complaint.

4. In the early morning hours of December 30, 2018, I was working at the San Diego Central Jail in the Jail Population Management Unit. I received a call from staff at medical intake that a transgender woman had been brought to the jail by an officer with the San Diego Police Department. Because transgender-identifying inmates are a particularly at-risk population in the jail setting, interviews with transgender detainees are prioritized. Right after I received that call, I went to conduct an interview with who I later learned was Ashley Vuz, the Plaintiff in this case.

5. I met with Plaintiff at approximately 4:00 a.m. I asked her the same series of questions I ask all arrestees during the standard classification interview including questions regarding any prior arrests, previous incarcerations, use of any illegal substances, and prior sexual or violent assaults. These questions help us assess the best housing for each individual taking into account the individual's safety concerns as well as the safety of any other inmates that they may be housed with.

6. I also asked Plaintiff questions regarding her gender identity. Plaintiff told me she identified as transgender, had legally changed her name, is undergoing hormone therapy, and wears feminine clothes and make up on a daily basis.

7. She also told me that she was fearful of being housed with male inmates. She executed a Gender Identity Statement of Preference form or J-350 form where she noted that she wanted to be searched by a female deputy and housed with female inmates. She further informed me that she planned to post bail. *Exhibit P is a true and correct copy of Ashley Vuz's J-350 form; Exhibit R is a true and correct copy of the incident report I completed documenting my conversation with Plaintiff.*

8. Based on the facts and circumstances available to me, I determined that Plaintiff should not be housed with male inmates. I wrote a report documenting my

conversation with Plaintiff and noting Plaintiff's concerns and housing preferences. *See Exhibit. R.* I further executed a J-72 segregated housing order where I noted that Plaintiff should be placed in protective custody because of concerns she had about her safety. *Exhibit S is a true and correct copy of the J-72 segregated housing order.*

9. I never recommended that Plaintiff be housed in administrative segregation. Administrative segregation is specialized housing unit for inmates who continually fail to meet minimum standards of mainline or protective custody housing, such as those with a propensity for violence. JPMU deputies are prohibited from housing gender non-conforming individuals in administrative segregation due to their gender identity. I did recommend that Plaintiff be placed in a private cell while at the SDCJ because she did not feel safe being placed with male inmates and I agreed that it would not be safe to place her with male inmates while she awaited posting bond.

10. After I conducted a classification interview with Plaintiff and had her sign the J-350 form, I had no further interaction with her. It later came to my attention that Plaintiff had posted bond and was released from the facility.

11. As a JPMU deputy for 9 years, I have classified approximately 70 transgender and non-binary identifying arrestees. An individual's appearance is not necessarily determinative of gender identity. And stated gender identity often does not inform preferences regarding searches and housing. In my experience, many arrestees who are transitioning from male to female prefer to be housed in a male facility or have no preference. This is one of the many reasons why a case-by-case individualized evaluation of the preferences of each gender non-conforming detainee is conducted. *Exhibit Q are true and correct copies of J-350 forms of transgender and non-binary identifying inmates.*

///
///
///
///

1  I declare under penalty of perjury under the laws of the State of California that the
2  foregoing is true and correct and that this Declaration was executed on September 22,
3  2021 at San Diego, California.

*/s/ Michael Frushon*
CORPORAL MICHAEL FRUSHON

4
No. 20cv0246-GPC-AGS