ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
ALEXA KATZ, Senior Deputy (SBN 317968)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-5279; Fax: (619) 531-6005
E-mail: robert.ortiz@sdcounty.ca.gov

Attorneys for Defendants County of San Diego and Emily Chow

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY R. VUZ, <br><br> Plaintiff, <br><br> v. <br><br> DCSS III, Inc., a California corporation doing business as GOSSIP GRILL; DWAYNE WYNNE, an individual; COUNTY OF SAN DIEGO, a political subdivision on the State of California, EMILY CHOW, an individual; CITY OF SAN DIEGO, a municipal corporation; MATTHEW ZADJA, an individual; and DOES NOS. 1 THROUGH 45, individuals, <br><br> Defendants. | No. 20cv0246-GPC-AGS <br><br> **DECLARATION OF SGT. ERIC FROISTAD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |

I, Sgt. Eric Froistad, declare as follows:

1. I have knowledge of the matters set forth herein, and could competently testify thereto if called upon.

2. I have been employed with the San Diego Sheriff's Department for the last 17 years. I am currently assigned to the Reentry Services Division. Prior to that, I was a sergeant assigned to the Jail Population Management Unit ("JPMU") for three years. Before promoting to sergeant, I also worked with the JPMU for two years as a

1 | classification deputy and training officer where I was assigned to both the San Diego
2 | Central Jail and George Bailey Detention Facility.

3. I am familiar with the allegations against the County of San Diego as set forth in Plaintiff Ashley R. Vuz's Second Amended Complaint.

4. The role of the JPMU, also known as classification, is to screen, assess, and house inmates in a manner that will protect the safety of that individual, other inmates, and staff. Pursuant to Sheriff's Detention Policy R.1, JPMU deputies interview every detainee, with a few exceptions not applicable here, during the booking process to assess the most appropriate housing for that individual. In determining housing assignments, JPMU deputies evaluate current charges, criminal history, as well as information obtained from the interview, and historical information from the Jail Information Management System. All inmates are asked questions to help screen the inmate's risk for either sexual abusiveness or victimization, prior to being assigned housing.

5. As a former JPMU Sergeant, I am familiar with Sheriff's Detention Policy R.13. Policy R.13 was drafted in accordance with the Federal Prison Rape Elimination Act. The purpose of the Prison Rape Elimination Act ("PREA") is to eradicate prisoner rape in all types of correctional facilities. PREA provides guidance on the safe and secure housing of transgender-identifying individuals and to ensure that classification decisions are made consistent with an each individual's declared gender identity. PREA outlines guidance for agencies on best practices for the processing and housing of LGBTQ individuals. Much of the language outlined in Policy R.13 is taken directly from PREA standards for prisons and jails.

6. Based on my training and experience, LGBTQ-identifying individuals are more likely to be sexually victimized in detention facilities as opposed to non-LGBTQ individuals. It is important that particular attention be paid to housing of LGBTQ inmates. And this is exactly what Policy R.13 does.

///
///

7. Policy R.13 mandates that if an individual identifies as transgender during the medical intake process, a JPMU deputy is notified. The JPMU deputy conducts a classification interview. Interviews with transgender individuals are prioritized to ensure safe placement inside the jail. During the interview, in addition to the standard questions asked during every classification interview, JPMU deputies also ask the arrestee their preferred gender identity and what gender they prefer to be housed with. This interview process is not impacted by whether a transgender-identifying individual has undergone gender reassignment surgery.

8. In accordance with PREA and Policy R.13, housing of transgender inmates is conducted on a case-by-case basis after an individualized assessment. The most important factor in considering where a transgender individual should be housed is an individual's own perception of vulnerability in regards to their safety. Some other factors considered are history of violent or sexual offenses, prior history of sexual victimization in a correctional setting, and other psychological or physical characteristics that place that person at risk. The policies and procedures set forth in Policy R.13 apply to all County jail facilities.

9. In order to ensure that each individual's housing preference is documented, a transgender arrestee will complete a Gender Identity Statement of Preference Form also known as a J-350 form. This form remains in the individual's booking jacket and notes whether the inmate prefers to be housed with males or females or if the individual does not have a housing preference. In addition to the J-350 form, the JPMU deputy also writes a report that documents both a detainees' housing preference and the JPMU's housing recommendation. If an individual has expressed fear for their safety or a JPMU deputy has determined it is not safe to house this person in the general population, a segregated housing order or J-72 form may also be completed.

10. If an individual chooses "no preference" on the J-350 form, they will initially be housed in a facility consistent with their biological sex. JPMU deputies, however, are still able to determine the appropriateness of housing for transgender

1  inmates in either a male or female facility on a case-by-case basis to ensure inmates
2  safety. Transgender-identifying inmates can also amend their housing preferences on the
3  J-350 form at any time while they are in custody. Housing assignments for transgender
4  individuals are also reassessed twice a year to ensure the continued appropriateness of
5  that housing assignment.
6        11.   Jail policy expressly provides that transgender individuals cannot be denied
7  access to any programs, services, or types of housing assignments based on their
8  expressed gender identity regardless of the primary sex of the facility they are assigned.
9        12.   Administrative segregation is a housing module used for inmates who
10 continually fail to meet minimum standards of mainline or protective custody housing,
11 such as those with a propensity for violence. Administrative segregation inmates are
12 placed in specific housing modules on floors three through eight. Detainees who are
13 placed in private holding cells on the first and second floor are not in administrative
14 segregation. Moreover, inmates who identify as transgender are prohibited from being
15 housed in administrative segregation based solely on gender identity.
16       13.   The Board of State and Community Correction has recognized that the San
17 Diego Sheriff's Departments policies and procedures meet the applicable state standards
18 for classifying inmates into San Diego County jail facilities. *See Exhibit W, Board of*
19 *State and Community Corrections Biennial Reports from 2016-2017 and 2018-2019.*
20       14.   Based on my training and experience working as a JPMU and intake deputy
21 at the San Diego Central Jail, I am also familiar with the intake and release process for
22 individuals who post bond. Individuals who post bond are different from "book and
23 release inmates" who do not need to post bond before being released from jail. On
24 average, it can take between six and twelve hours for an individual who is posting bond
25 to be processed for release. This time range is dependent on several factors including the
26 wants and warrants check and Livescan fingerprinting process, which can take
27 approximately 4 hours. Other factors that affect the timing of the release process include
28 the number of inmates that need to be processed in and out of the facility and the

4

No. 20cv0246-GPC-AGS

1 | responsiveness of the bail-bonds company in processing the bond application.
2 |     I declare under penalty of perjury under the laws of the State of California that the
3 | foregoing is true and correct and that this Declaration was executed on September 22 at
4 | San Diego, California.

_____
SGT. ERIC FROISTAD

5

No. 20cv0246-GPC-AGS